1   Squire, Sanders & Dempsey L.L.P.
    Douglas J. Rovens (State Bar # 106562)
2   *drovens@ssd.com*
    James E. McDonald (admitted *Pro Hac Vice*)
3   *jmcdonald@ssd.com*
    Daniel T. Balmat (State Bar # 230504)
4   *dbalmat@ssd.com*
    One Maritime Plaza, Suite 300
5   San Francisco, CA  94111
    Telephone:  +1.415.954.0383
6   Facsimile:  +1.415.393.9887

7   Attorneys for Appellants
    PROTEASE SCIENCES, INC.
8   AND SONORAN DESERT CHEMICALS, INC.

9                  UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11        On Appeal from the United States Bankruptcy Court
              for the Northern District of California
12                   Hon. Edward D. Jellen

13

14  PROTEASE SCIENCES, INC.,            | CONSOLIDATED CASE NOS. 08-00692-SI and 08-00693-SI

15                Appellant,

16        vs.                           | (Appeal from Chapter 11 Bankruptcy Case No. 07-42767)

17  ARRIVA PHARMACEUTICALS, INC.,

18                Appellee.             | **E-FILING**

19                                      | **COMBINED OPENING BRIEF OF APPELLANTS PROTEASE AND SONORAN IN APPEAL FROM DISALLOWANCE OF PROOFS OF CLAIM**
20

21  ─────────────────────────

22  SONORAN DESERT CHEMICALS, L.L.C.

23

24                Appellant,

25        vs.

26  ARRIVA PHARMACEUTICALS, INC.,

27                Appellee.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

# TABLE OF CONTENTS

**Page**

STATEMENT OF APPELLATE JURISDICTION ................................................................ 1

STATEMENT OF ISSUES ............................................................................................... 1

STANDARD OF REVIEW ............................................................................................... 1

STATEMENT OF THE CASE .......................................................................................... 2

STATEMENT OF FACTS ................................................................................................. 3

    A.    The History Between AlphaMed And Arriva. ....................................................... 3

    B.    The Bankruptcy Court's Disallowance Of The Protease And Sonoran Claims. .................................................................................................................... 7

ARGUMENT .................................................................................................................... 7

    I.    THE BANKRUPTCY COURT ERRED IN DISALLOWING THE PROTEASE AND SONORAN CLAIMS BASED ON ARRIVA'S OBJECTION THAT JOHN LEZDEY LACKED AUTHORITY TO SIGN THE PROOFS OF CLAIM. ..................................................................................... 7

        A.    The Bankruptcy Court Erred As A Matter Of Law In Relying On The Rooker-Feldman Doctrine To Give Effect To The Preliminary Injunction Against John Lezdey In The Arizona State Action. .................. 8

            1.    Overview of the *Rooker-Feldman* Doctrine.................................... 9

            2.    The *Rooker-Feldman* Doctrine Does Not Apply Because Protease And Sonoran Were Not Losing Parties In The Arizona State Action. .................................................................... 10

            3.    The Rooker-Feldman Doctrine Does Not Apply Because There Was Never A Final Judgment Against John Lezdey In The Arizona State Action And The State Court Proceedings Have Not Ended. .......................................................... 11

        B.    The Bankruptcy Court Could Not Rely Upon The Full Faith And Credit Statute To Give Effect To The Preliminary Injunction Against John Lezdey. .......................................................................... 13

        C.    Protease And Sonoran Cannot Be Barred From Filing Proofs Of Claim By Virtue Of The Preliminary Injunction In The Arizona State Action. ............................................................................................ 14

    II.    THE BANKRUPTCY COURT ERRED IN SUSTAINING ARRIVA'S OBJECTIONS TO THE PROTEASE AND SONORAN CLAIMS BECAUSE ARRIVA LACKED STANDING TO CHALLENGE MR. LEZDEY'S AGENCY AUTHORITY .................................................. 16

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

**TABLE OF CONTENTS**
**(Continued)**

Page

III.    THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW TO THE EXTENT IT HELD THAT PROTEASE AND SONORAN WERE COLLATERALLY ESTOPPED FROM RAISING ALLEGATIONS OF BURGLARY AND THEFT OF INTELLECTUAL PROPERTY. ...................... 18

    A.    The Arizona's Court's August 2004 Hearing Did Not Involve Allegations of Theft Or Burglary By Arriva's Agents.............................. 18

    B.    Protease And Sonoran Cannot Be Collaterally Estopped From Raising Allegations Of Burglary As A Basis For Their Claims. .............. 19

IV.    THE PROTEASE AND SONORAN CLAIMS SHOULD BE REMANDED TO THE BANKRUPTCY COURT FOR A FULL EVIDENTIARY HEARING ON THE VALUE OF THE CLAIMS FOR PURPOSES OF DISTRIBUTION. ........................................................................ 21

CONCLUSION ................................................................................................................ 22

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-ii-

TABLE OF CONTENTS
Case No. 08-00692-SI; Case No. 08-00693-SI

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Allen v. McCurry,*
    449 U.S. 90 (1980) ........................................................................................ 19

*Begay v. Kerr-McGee Corp.,*
    682 F.2d 1311 (9th Cir. 1982) ...................................................................... 14

*District of Columbia Court of Appeals v. Feldman,*
    460 U.S. 462 (1983) ...................................................................................... 9

*Donovan v. Dallas,*
    377 U.S. 408 (1964) ...................................................................................... 14

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
    544 U.S. 280 (2005) ........................................................................ 9, 10, 11, 12

*Gen. Atomic Co. v. Felter,*
    434 U.S. 12 (1977) ........................................................................................ 14

*Gens v. Resolution Trust Corp.,*
    112 F.3d 569 (1st Cir. 1997) ........................................................................ 17

*Gordon v. Koppel,*
    203 F.3d 610 (9th Cir. 2000) ........................................................................ 11

*Henrichs v. Valley View Dev.,*
    474 F.3d 609 (9th Cir. 2007) ........................................................................ 10

*Hood v. Encinitas Union Sch. Dist.,*
    486 F.3d 1099 (9th Cir. 2007) ...................................................................... 1

*In re Acequia, Inc.,*
    787 F.2d 1352 (9th Cir. 1986) ...................................................................... 1

*In re Beck,*
    283 B.R. 163 (Bankr. E.D. Pa. 2002) .......................................................... 15

*In re Commercial W. Fin. Corp.,*
    761 F.2d 1329 (9th Cir. 1985) ...................................................................... 1

*In re Cool Fuel, Inc.,*
    117 F. App'x 514 (9th Cir. 2004) ................................................................ 16

*In re Gruntz,*
    202 F.3d 1074 (9th Cir. 2002) ...................................................................... 14

*In re Harbin,*
    486 F.3d 510 (9th Cir. 2007) ........................................................................ 9

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-iii-

TABLE OF AUTHORITIES
Case No. 08-00692-SI; Case No. 08-00693-SI

1

**TABLE OF AUTHORITIES**
(Continued)

2

Page

3

*In re Lopez*,
   367 B.R. 99 (B.A.P. 9th Cir. 2007).........................................................................9

4

*In re Meyerland Co.*,
   960 F.2d 512 (5th Cir. 1992).................................................................................11

5

6

*In re Nova Real Estate Inv. Trust*,
   23 B.R. 62 (Bankr. E.D. Va. 1982)........................................................................21

7

*In re Sasson*,
   424 F.3d 864 (9th Cir. 2005).................................................................................15

8

9

*In re Thomas McKinnon Sec.*,
   191 B.R. 976 (Bankr. S.D.N.Y. 1996)...................................................................21

10

*In re Wallace Bookstore, Inc.*,
   317 B.R. 720 (Bankr. E.D. Ky. 2004)....................................................................21

11

12

*Jicarilla Apache Nation v. Rio Arriba County*,
   440 F.3d 1202 (10th Cir. 2006)..............................................................................12

13

*Johnson v. De Grandy*,
   512 U.S. 997 (1994)..................................................................................................9

14

15

*Lance v. Dennis*,
   546 U.S. 459 (2006)............................................................................................9, 10

16

*Mo's Express v. Sopkin*,
   441 F.3d 1229 (10th Cir. 2006)..............................................................................10

17

18

*Noel v. Hall*,
   341 F.3d 1148 (9th Cir. 2003)...........................................................9, 10, 11, 13

19

*Quinn v. Monroe County*,
   330 F.3d 1320 (11th Cir. 2003)..............................................................................19

20

21

*Rooker v. Fidelity Trust Co.*,
   263 U.S. 413 (1923)..................................................................................................9

22

*States Res. Corp. v. Architectural Team, Inc.*,
   433 F.3d 73 (1st Cir. 2005)....................................................................................12

23

24

*Waffenschmidt v. Mackay*,
   763 F.2d 711 (5th Cir. 1985)..................................................................................15

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

–iv–

TABLE OF AUTHORITIES
Case No. 08-00692-SI; Case No. 08-00693-SI

**TABLE OF AUTHORITIES**
**(Continued)**

Page

**STATE CASES**

*Carnival Corp. v. Middleton*,
  941 So. 2d 421 (Fla. App. 2006) ........................................................................................... 21

*Chaney Bldg. Co. v. City of Tucson*,
  716 P.2d 28 (Ariz. 1986) .............................................................................................. 20, 21

*City of Glendale v. Aldabbagh*,
  939 P.2d 418 (Ariz. 1997) ............................................................................................ 12, 13

*Corbett v. Manorcare of Am. Inc.*,
  126 P.3d 1027 (Ariz. 2006) ................................................................................................... 20

*Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  945 So. 2d 1216 (Fla. 2006) ................................................................................................. 21

*Elia v. Pifer*,
  977 P.2d 796 (Ariz. Ct. App. 1998) ..................................................................................... 13

*Garcia v. Gen. Motors Corp.*,
  990 P.2d 1069 (Ariz. Ct. App. 1999) .............................................................................. 20, 21

*Standage Ventures, Inc. v. State*,
  562 P.2d 360 (Ariz. 1977) ..................................................................................................... 20

*State v. Schallock*,
  941 P.2d 1275 (Ariz. 1997) ................................................................................................... 13

*Tucson v. Superior Court*,
  798 P.2d 374 (Ariz. 1990) ..................................................................................................... 20

**STATUTES**

28 U.S.C. § 158 ............................................................................................................................ 1

28 U.S.C. § 1738 ........................................................................................................................ 13

Fed. Bankr. R. 8013 ..................................................................................................................... 1

Fed. R. Bankr. P. 3001 .............................................................................................................. 16

**OTHER AUTHORITIES**

Full Faith and Credit Clause of the Constitution, U.S. CONST. art. IV, § 1 .................................. 13

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-v-

TABLE OF AUTHORITIES
Case No. 08-00692-SI; Case No. 08-00693-SI

1

## STATEMENT OF APPELLATE JURISDICTION

2        Appellants Protease Sciences, Inc. ("Protease") and Sonoran Desert Chemicals, LLC

3  ("Sonoran") bring this appeal from the final judgments entered by the Bankruptcy Court in *In re*

4  *Arriva Pharmaceuticals, Inc.*, Bankruptcy Case No. 07-42767 (Bankr. N.D. Cal.).

5        On December 27, 2007, the Bankruptcy Court entered its order disallowing the Proof of

6  Claim filed by Protease on October 9, 2007 in the amount of $30 million (the "Protease Claim"),

7  and alternatively estimating the Protease Claim at zero for voting purposes under the Reorganized

8  Debtor's plan.  (Combined Appendix for Appeals 08-00691, 08-00692, 08-00693 and 08-00825

9  ("Apx."), filed concurrently, at 435-438).

10       Also on December 27, 2007, the Bankruptcy Court entered its order disallowing the Proof

11  of Claim filed by Sonoran on October 9, 2007 (Claim No. 14 on the Claims Register), and

12  alternatively estimating the Sonoran Claim at zero for voting purposes under the Reorganized

13  Debtor's plan.  (Apx. at 439-442).

14       Protease and Sonoran timely filed their Notices of Appeal on January 4, 2008.  (Apx. at

15  449-450, 456-457).  This Court has jurisdiction under 28 U.S.C. § 158(a)(1).

16

## STATEMENT OF ISSUES

17     1.     Did the Bankruptcy Court err in disallowing the Protease and Sonoran Claims in

18  their entirety, without leave to amend?

19

## STANDARD OF REVIEW

20       This Court reviews the Bankruptcy Court's findings of fact under a clearly erroneous

21  standard.  Fed. Bankr. R. 8013; *In re Acequia, Inc.*, 787 F.2d 1352, 1357 (9th Cir. 1986).  In

22  contrast, the Bankruptcy Court's conclusions of law are reviewed *de novo*, and this Court may

23  substitute its own legal conclusions for those of the Bankruptcy Court.  *See In re Commercial W.*

24  *Fin. Corp.*, 761 F.2d 1329, 1333 (9th Cir. 1985); *In re Acequia, Inc.*, 787 F.2d at 1357.  Mixed

25  questions of law and fact also are reviewed *de novo*.  *Hood v. Encinitas Union Sch. Dist.*, 486

26  F.3d 1099, 1104 (9th Cir. 2007).

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-1-

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

1

**STATEMENT OF THE CASE**

2    On August 29, 2007, Reorganized Debtor-Appellee Arriva Pharmaceuticals, Inc.

3    ("Arriva") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. *See In*

4    *re Arriva Pharmaceuticals, Inc.*, Bankruptcy Case No. 07-42767 (Bankr. N.D. Cal.). On October

5    9, 2007, Protease filed a Proof of Claim against Arriva in the amount of $30 million. (Apx. at 4-

6    23). On the same day, Sonoran filed a Proof of Claim against Arriva. (Apx. at 24-42).[1] Among

7    other allegations, both Protease and Sonoran alleged as follows: "Arriva agents have broken in

8    offices and homes wherein trade secrets were stored which were stolen. The trade secrets

9    appeared in Arriva's patent applications." (Apx. at 5, 25).

10    On November 7, 2007, Arriva filed an omnibus objection to the claims of various

11    creditors, including specific objections to the Protease and Sonoran Claims. (Apx. at 200-207).

12    Arriva contended that the Protease and Sonoran Claims, which were signed by John Lezdey, were

13    invalidly filed on the ground that a preliminary injunction entered in Arizona state court deprived

14    Mr. Lezdey of acting on behalf of Protease and Sonoran. Arriva also contended that Protease and

15    Sonoran should be barred by collateral estoppel or issue preclusion from raising their allegations

16    of burglary and theft of intellectual property because of an August 2004 hearing held in Arizona

17    state court regarding the denial of a motion to disqualify counsel (which hearing did not involve

18    the litigation of Protease's and Sonoran's claims of burglary and theft of intellectual property, and

19    which was held <u>after</u> Protease and Sonoran had been dismissed as parties to the litigation).

20    Finally, Arriva conclusorily asserted that Protease and Sonoran failed to state a claim upon which

21    relief can be granted, and that the Protease and Sonoran Claims were not reflected on Arriva's

22    books and records.

23    On December 13, 2007, the Bankruptcy Court held a hearing on, among other things,

24    Arriva's objection to the Protease and Sonoran Claims and disallowed the claims in their entirety.

25    (Apx. at 469-523). On December 27, 2007, the Bankruptcy Court entered a final order

26

27    _____

28    [1] The Protease Proof of Claim and the Sonoran Proof of Claim are collectively referred to herein as "the Protease and Sonoran Claims."

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-2-

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

disallowing the Protease and Sonoran Claims in their entirety without leave to amend. (Apx. at 435-438, 439-442). This timely appeal ensued. (Apx. at 449-450, 456-457).

**STATEMENT OF FACTS**

In order to understand why the Protease and Sonoran Claims are meritorious and why the Bankruptcy Court erred in disallowing them, it is necessary to briefly set forth the history between John Lezdey and Allan Wachter, including the precise facts involving a 1999 lawsuit filed by Wachter and his companies in Arizona state court against John Lezdey, his wife Noreen, his sons Darren and Jarrett, and several of their companies. The Arizona litigation is the principal basis upon which the Bankruptcy Court erroneously denied the Protease and Sonoran Claims.

**A.    The History Between AlphaMed And Arriva.**

In the early 1990s, John Lezdey, a patent attorney, in his name and that of Wachter, a doctor, patented certain methods for using a protein known as Alpha1-antitrypsin ("AAT"), an anti-inflammatory agent that has proven to be very successful in treating several medical conditions (the "AAT Patents"). Thereafter, Lezdey and Wachter formed a Nevada limited liability company known as Sonoran Desert Chemicals, L.L.C.. Lezdey and Wachter assigned all of their rights in the AAT Patents to Sonoran, which was owned by Lezdey and his entities and Wachter and his entities. Lezdey and Wachter also formed Protease to act as Sonoran's agent. (Apx. at 062).

On or around December 31, 1992, Sonoran entered into an agreement with Protease (the "Protease Agency Agreement") whereby Protease was appointed as Sonoran's agent for various purposes including negotiating and entering into licensing, distribution and other agreements for and on behalf of Sonoran worldwide, subject to Sonoran's approval. (Apx. at 062). The Protease Agency Agreement specifically provided, however, that Sonoran retained all rights to the patents. (Apx. at 062, 110). The Protease Agency Agreement also expressly provided that any licensing agreement entered into by Protease had to be ratified by Sonoran. (Apx. at 062, 110).

In 1997, Arriva (then known as AlphaOne Pharmaceuticals, Inc.) was incorporated in California by its founders, Lezdey, Wachter, Philip Barr ("Barr") (whom Lezdey and Wachter

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-3-

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

1    brought in to head up research and development work), and David Kent (whom Barr brought in to

2    head up investment related activities).  (Apx. at 062).

3         In November 1997 Arriva and Protease signed a Term Sheet, which outlined the terms of

4    a proposed license agreement.  As a precondition to moving forward with an exclusive,

5    worldwide license agreement, Arriva was required to meet express financial milestones.  The

6    Term Sheet, to remain in effect for a period of twelve months, was signed by both Lezdey and

7    Wachter.  (Apx. at 063).

8         During the spring of 1998 Arriva and Protease began negotiating the terms of a proposed

9    license agreement that would be executed on the condition that the financial requirements and

10   other conditions of the Term Sheet were met and all other terms and conditions were satisfactory

11   to Lezdey and Sonoran.  As a result of disagreements over the terms of the proposed license and

12   Arriva's failure to raise the required capital, Protease consistently refused to enter into any license

13   agreement with Arriva.  (Apx. at 063).

14        In November 1998 Lezdey, on behalf of Protease, agreed to extend the Term Sheet for an

15   additional thirty (30) days, through December 31, 1998, based on representations that Arriva was

16   close to obtaining the required financing.  The funding, however, was never achieved and the

17   Term Sheet expired by its own terms on December 31, 1998.  (Apx. at 063-064).

18        Unbeknownst to Lezdey at the time, Arriva induced Wachter, who was an officer and

19   board member of Arriva at the time, to sign on Protease's behalf the draft Protease/Arriva

20   License.  (Apx. at 064).  Wachter had no authority to sign the agreement on behalf of Protease or

21   Sonoran.  At the time the purported Protease/Arriva License was signed by Wachter, Lezdey was

22   the president of Protease.  Protease's bylaws provide that the president (Lezdey) held the office of

23   Chief Executive Officer.  (Apx. at 064, 101).  Wachter was the secretary and vice president of

24   Protease—positions that, according to the Protease bylaws, did not afford him the right to execute

25   the purported Protease/Arriva License.  Furthermore, because Protease never owned the patents,

26   any license entered into by Protease had to be ratified by Sonoran, which it was not.  (Apx. at

27   064).  The limitation on Wachter's authority was known to Arriva and to its officers and

28   directors.  (Apx. at 064, 386-430).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-4-

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

1    Moreover, Protease did not have the ability to convey an interest in the AAT patents
2    because all rights, title, and interest in the patents for the United States were owned by Sonoran
3    and by Lezdey and Wachter, individually, throughout the rest of the world. Furthermore, as
4    Arriva knew, Sonoran and Lezdey had to approve any licensing agreement entered into by
5    Protease. Arriva did not seek or obtain Sonoran's consent and knew Lezdey did not approve or
6    ratify the agreement on Sonoran's behalf. (Apx. at 064-065).

7    In or around March or April 1999, based on the unauthorized and fraudulent
8    Protease/Arriva License, Arriva entered into an unauthorized sublicense with Prometic
9    BioSciences for exploitation of the AAT patents for dermatological applications. In or around
10   July 1999, based on the unauthorized and fraudulent Protease/Arriva License, Arriva entered into
11   a joint venture agreement with Baxter Healthcare Corporation for the worldwide right to make,
12   use, and sell AAT. Arriva failed to obtain the required consent and approval of Protease or
13   Sonoran to enter into these agreements. (Apx. at 065).

14   Protease informed Baxter that Arriva did not have rights to the AAT patents or any license
15   under which to issue a sublicense. In response, Arriva and Wachter filed or sponsored five
16   separate lawsuits concurrently in four different states against John Lezdey, his family, and his
17   companies, including a 1999 lawsuit brought in Arizona state court by Wachter and his
18   companies against John Lezdey, his wife Noreen, his sons Darren and Jarrett, and several of their
19   companies. *See Allan Wachter, et al. v. John Lezdey, et al.*, Case No. CV1999-009334 (Superior
20   Court for the State of Arizona, Maricopa County) (the "Arizona State Action") (Apx. at 065-066).

21   On February 2, 2000, Wachter obtained a preliminary injunction in the Arizona State
22   Action enjoining John Lezdey and his family from acting on behalf of Protease or Sonoran or
23   contacting any business prospects of Protease's without Wachter's consent. (Apx. at 359-367).
24   *Significantly, Protease and Sonoran are not bound by the preliminary injunction (nor any other*
25   *injunction or judgment) because they were dismissed as defendants from the Arizona State Action*
26   *before the preliminary injunction was issued.* (Apx. at 388).

27   Trial in the Arizona State Action was scheduled to begin on January 15, 2002. Just prior
28   to the trial, however, the Arizona court entered judgment in favor of Wachter and against Darren

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-5-

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

and Jarett Lezdey on the issue of liability as a discovery sanction. (Apx. at 363-364). The trial on the issue of damages proceeded against John Lezdey's family *in abstentia*, and the Arizona court ultimately entered a judgment against Noreen, Darren and Jarett Lezdey, and J.L. Technology in favor of Wachter. (Apx. at 381-385). The Court also entered a Permanent Injunction. (Apx. 162-176).[2]

As noted, Protease and Sonoran were dismissed as parties from the Arizona State Action and therefore Protease and Sonoran are *not* bound by the Permanent Injunction or judgment entered by the Arizona court. (Apx. at 388). In addition, John Lezdey is not bound by the Permanent Injunction and judgment either because he filed for personal bankruptcy on January 14, 2002, prior to the commencement of the Arizona trial. (Apx. at 368-380). To date, Arriva has failed to obtain a permanent injunction against Mr. Lezdey in the Arizona State Action. (Apx. at 310-346).[3]

---

[2] Among other things, the Permanent Injunction purported to find that the draft license agreement between Protease and Arriva signed by Wachter was in effect because Lezdey advised Wachter that the agreement was valid and authorized Wachter to sign the agreement—a finding that a federal jury in Florida unanimously rejected (after hearing all of the evidence and arguments presented by both Arriva and AlphaMed). *See AlphaMed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, Case No. 03-20078 (S.D. Fla.) (the "Florida Federal Action"). The Florida case was tried to a jury beginning in September 2005 and after a three and a half month trial resulted in a unanimous jury verdict in favor of AlphaMed against Arriva for $78 million, including $30 million in punitive damages. When asked by an interrogatory to specify unauthorized acts of Arriva, the jury foreperson wrote out in longhand the following jury finding:

> When AlphaOne/Arriva improperly accepted the signature of Alan [sic] Wachter as Protease Science CEO the process of unfair competition began as the Protease Science By-Laws do not provide for said office and give authority for signing contracts to the President.

(Apx. at 301-302). The Florida Federal Action is addressed more fully in Plaintiff-Appellant AlphaMed's Opening Brief in Appeal from Bankruptcy Adversary Proceeding, filed in Case No. 08-0825, which is incorporated herein by reference.

[3] Arriva's misrepresentations to the Bankruptcy Court were rampant. Arriva had argued that "John Lezdey, JL, Sonoran and Protease were all defendants in the Arizona Litigation and so are bound by the decisions rendered by that court." (Apx. at 221). As just noted, this is not true. Both Protease and Sonoran were dismissed as defendants before any of the injunctions were entered in the Arizona State Action, and John Lezdey is *not* bound by the Arizona judgment and Permanent Injunction. (Apx. at 310-346, 388). Arriva also represented that "Sonoran and Protease . . . were parties to the Arizona Litigation and so are bound by the finding of the Arizona Court with respect to [the August 2004] hearing. They have had their day in court." (Apx. at 228). Again, not true. Protease and Sonoran were dismissed as defendants well before August 2004. (Apx. at 388). They did *not* have their day in court, and certainly not on the claims raised in their proofs of claim.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-6-

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

**B.    The Bankruptcy Court's Disallowance Of The Protease And Sonoran Claims.**

On November 7, 2007, Arriva filed an omnibus objection to the claims of various creditors, including specific objections to the Protease and Sonoran Claims.  (Apx. at 200-207).  Arriva contended that these claims, which were filed by John Lezdey, were invalidly filed on the ground that the preliminary injunction entered in Arizona state court deprived Mr. Lezdey of acting on behalf of Protease and Sonoran, and that the Bankruptcy Court was obligated to give effect to the Arizona ruling.  Arriva also contended that Protease and Sonoran should be barred by collateral estoppel or issue preclusion from raising their allegations of burglary and theft of intellectual property as a result of an August 24, 2004 "Under Advisement Ruling" entered by the court in the Arizona State Action (a ruling which briefly and tangentially touched upon *different* allegations of burglary and theft than those raised in the Protease and Sonoran Claims).

On December 13, 2007, the Bankruptcy Court held a hearing on, among other things, Arriva's objections to the Protease and Sonoran Claims.  (Apx. at 469-523).  The Bankruptcy Court sustained Arriva's objections and disallowed the claims of Protease and Sonoran in their entirety without leave to amend.  (Apx. at 435-438, 439-442).  The Bankruptcy Court concluded that these claims were invalidly filed because Mr. Lezdey violated the preliminary injunction issued in the Arizona State Action.  (Apx. at 517-518).  The Bankruptcy Court thus held that Mr. Lezdey had no authority to file the claims on behalf of Protease and Sonoran.  (Apx. at 517-518).

## ARGUMENT

**I.    THE BANKRUPTCY COURT ERRED IN DISALLOWING THE PROTEASE AND SONORAN CLAIMS BASED ON ARRIVA'S OBJECTION THAT JOHN LEZDEY LACKED AUTHORITY TO SIGN THE PROOFS OF CLAIM.**

The Bankruptcy Court committed numerous errors of law in disallowing the Protease and Sonoran Claims on the ground that John Lezdey lacked authority to act on behalf of these creditors.  First, the Bankruptcy Court erred as a matter of law in relying upon the *Rooker-Feldman* doctrine—a very narrow doctrine enforced in only two U.S. Supreme Court cases—to give effect to the preliminary injunction entered against John Lezdey in the Arizona State Action in order to hold that the Protease and Sonoran Claims were invalid.  None of the elements

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

1    necessary for invoking this doctrine can be satisfied, nor did the Bankruptcy Court even consider

2    the proper elements in disallowing the Protease and Sonoran Claims.  For similar reasons, the

3    Bankruptcy Court could not rely upon the Full Faith and Credit statute to give effect to the

4    preliminary injunction against Mr. Lezdey.  Ultimately, the Bankruptcy Court failed to recognize

5    that the Arizona preliminary injunction could not bar Protease and Sonoran (who were non-

6    parties to that action) from filing proofs of claim in bankruptcy court.  Finally, the Bankruptcy

7    Court acted in derogation of its statutorily mandated jurisdiction under federal law and

8    encroached upon both state and corporate law in holding that the Protease and Sonoran Claims

9    were invalidly filed.

10           For the reasons set forth below, the Bankruptcy Court's disallowance of claims should be

11    reversed.

12

13    **A.     The Bankruptcy Court Erred As A Matter Of Law In Relying On The Rooker-Feldman Doctrine To Give Effect To The Preliminary Injunction Against John Lezdey In The Arizona State Action.**

14

15           The Bankruptcy Court erred as a matter of law in giving effect to the Arizona preliminary

16    injunction under the *Rooker-Feldman* doctrine and holding that the Protease and Sonoran Claims

17    were invalid on the ground that John Lezdey lacked authority to act on behalf of these creditors.

18           First, the *Rooker-Feldman* doctrine does not apply by its very terms because Protease and

19    Sonoran were dismissed as defendants from the Arizona State Action *before* any injunctions were

20    issued by the Arizona court.  Thus, by filing their Proofs of Claim, Protease and Sonoran were not

21    losing parties seeking to appeal or overturn an unfavorable state court judgment against them.

22           Second, and in addition, the *Rooker-Feldman* doctrine does not—and cannot—apply as a

23    matter of law because (1) no final judgment has been entered against John Lezdey in the Arizona

24    State Action, and (2) the proceedings in the Arizona State Action have not yet ended—two

25    necessary requirements of the doctrine.  In giving effect to the preliminary injunction against John

26    Lezdey to disallow the Protease and Sonoran Claims, the Bankruptcy Court failed to apply the

27    very basic elements of the *Rooker-Feldman* doctrine.  Its erroneous decision must be reversed.

28

### 1.    Overview of the *Rooker-Feldman* Doctrine.

The *Rooker-Feldman* doctrine is based on two Supreme Court cases decided sixty years apart, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).   It expresses the "unremarkable" principle that Congress has not given district courts general appellate jurisdiction over state court judgments.  *In re Harbin*, 486 F.3d 510, 518 (9th Cir. 2007) (citation omitted).

The *Rooker-Feldman* doctrine is a very limited and constrained doctrine—a fact which the Bankruptcy Court failed to recognize.  *See In re Lopez*, 367 B.R. 99, 103 (B.A.P. 9th Cir. 2007) ("The Supreme Court [has] severely constrained *Rooker-Feldman* . . . .").   Briefly stated, the *Rooker-Feldman* doctrine provides that a losing party in state court is prohibited from seeking an appeal of an unfavorable state court judgment to a lower federal court.  *See In re Harbin*, 486 F.3d at 519; *Noel v. Hall*, 341 F.3d 1148, 1159 (9th Cir. 2003).

Importantly, the doctrine "does *not* bar actions by *nonparties* to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment." *In re Lopez*, 367 B.R. at 104 (quoting *Lance v. Dennis*, 546 U.S. 459, 466 (2006)) (emphasis added); *see also Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (holding that *Rooker-Feldman* is inapplicable to federal cases involving parties other than those before the state court); *Noel*, 341 F.3d at 1159 (*Rooker-Feldman* does not apply to a federal court suit brought by a non-party to the state court suit).

As the United States Supreme Court recently recognized, the *Rooker-Feldman* doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also In re Harbin*, 486 F.3d at 519 (the *Rooker-Feldman* doctrine only "bars a losing party in state court from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights") (citation and quotation marks omitted).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-9-

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

1    Courts have made clear that that the *Rooker-Feldman* doctrine "does not override or

2    supplant issue and claim preclusion doctrines." *In re Lopez*, 367 B.R. at 105 (citing *Exxon Mobil*,

3    544 U.S. at 284 and *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007)); *see also*

4    *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1143 (9th Cir. 2004) (*Rooker-Feldman* does not "give

5    greater preclusive effect to state court judgments than the states themselves would give those

6    judgments. Such super-preclusive effect would violate the requirement of 28 U.S.C. § 1738 that

7    federal courts give the same (not more and not less) preclusive effect the rendering state courts

8    would give to those judgments).

9  
10    **2.    The *Rooker-Feldman* Doctrine Does Not Apply Because Protease And Sonoran Were Not Losing Parties In The Arizona State Action.**

11    The *Rooker-Feldman* doctrine did not permit the Bankruptcy Court to give effect to the

12    Arizona injunction against Protease and Sonoran for the very simple reason that they were not

13    parties to the Arizona preliminary injunction. These creditors were dismissed as defendants from

14    the Arizona State Action *before* any injunctions were issued. (Apx. at 161-176, 177-181, 276,

15    347-359, 387-388).

16    Courts have repeatedly held that the *Rooker-Feldman* doctrine does not apply to non-

17    parties to the prior state court judgment. *See Mo's Express v. Sopkin*, 441 F.3d 1229, 1234 (10th

18    Cir. 2006). The Supreme Court in *Exxon Mobil* specifically stated that the *Rooker-Feldman*

19    doctrine has "no application to a federal suit brought by a nonparty to the state suit." *Exxon*

20    *Mobil* 544 U.S. at 287. The Supreme Court further clarified in *Lance* that *Rooker-Feldman*

21    cannot be applied to nonparties, even if they are in privity with parties to the original state-court

22    suit. *See Lance*, 546 U.S. at 466.

23    Since Protease and Sonoran were dismissed as defendants in the Arizona state court

24    proceeding before the preliminary injunction was issued, they are not "state-court losers" seeking

25    to overturn the non-final judgment entered against John Lezdey. *See Exxon Mobil*, 544 U.S. at

26    284 (*Rooker-Feldman* doctrine "is confined to . . . cases brought by state-court losers . . . ."").

27    Instead, Protease and Sonoran are "non-parties," and the *Rooker-Feldman* doctrine "does not bar

28    actions by nonparties." *In re Lopez*, 367 B.R. at 104; *Noel*, 341 F.3d at 1159.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-10-

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

For this reason alone, the Bankruptcy Court erred in invoking the *Rooker-Feldman* doctrine in order to disallow the Protease and Sonoran Claims based on a preliminary injunction entered against John Lezdey (not Protease or Sonoran) in the Arizona State Action.

### 3. The Rooker-Feldman Doctrine Does Not Apply Because There Was Never A Final Judgment Against John Lezdey In The Arizona State Action And The State Court Proceedings Have Not Ended.

The Bankruptcy Court further erred in giving effect to the Arizona preliminary injunction because: (1) no final judgment was entered against John Lezdey in the Arizona State Action, and (2) the proceedings in the Arizona State Action have not yet ended. Thus, even if John Lezdey and Protease and Sonoran could be considered one and the same (and they are *not* and *cannot* be), the *Rooker-Feldman* doctrine does not apply for this additional reason.

Under Ninth Circuit law, the *Rooker-Feldman* doctrine only applies to final judgments of a state court. In *Noel*, the Ninth Circuit stated that "[u]nder *Rooker-Feldman*, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the *final* judgment of a state court." *Noel*, 341 F.3d at 1154 (emphasis added); *see also H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 612-13 (9th Cir. 2000) ("The record before us indicates that the [state trial court] has yet to enter a final judgment" and thus "there is no final state judgment or order to which the *Rooker-Feldman* doctrine might relate and we need not reach the question of the doctrine's applicability to this action.").

The Ninth Circuit's position is consistent with the Supreme Court's recent decision in *Exxon Mobil*, in which the Court reversed the lower court's application of the *Rooker-Feldman* doctrine. *See Exxon Mobil*, 544 U.S. at 284. The Supreme Court described the *Rooker-Feldman* doctrine as applicable only when "the losing party in state court filed suit in federal court *after the state proceedings ended*." *Id*. at 291 (emphasis added).

Several other circuit courts have similarly required these elements before applying the *Rooker-Feldman* doctrine. For example, the Fifth Circuit has said that the doctrine applies to "final state court judgments," not interlocutory orders. *In re Meyerland Co.*, 960 F.2d 512, 516 (5th Cir. 1992). Additionally, the First Circuit held that "if federal litigation is initiated before

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-11-

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

1   state proceedings have ended . . . the *Rooker-Feldman* doctrine does not deprive the court of

2   jurisdiction." *States Res. Corp. v. Architectural Team, Inc.*, 433 F.3d 73, 79 (1st Cir. 2005).

3   Most recently, the Tenth Circuit stated that when a state court had not entered a decision in the

4   case, the *Rooker-Feldman* doctrine "does not prevent this Court from exercising jurisdiction."

5   *Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1208 (10th Cir. 2006).

6       Thus, in order for *Rooker-Feldman* to apply, there must be (1) a final state court

7   judgment, and (2) the state court proceeding must have ended.  Neither of these elements are

8   satisfied in this case, and the Bankruptcy Court did not find otherwise (nor even recognize that

9   these elements apply).

10      First, a final judgment has not yet been entered against John Lezdey in the Arizona State

11  Action.  It is undisputed that John Lezdey filed for personal bankruptcy in Florida on January 14,

12  2002, prior to commencement of trial.  (Apx. at 368-380).  As a result, John Lezdey is not bound

13  by the Permanent Injunction or judgment entered by the Arizona court.  Under Arizona law, a

14  preliminary injunction is not a final judgment.  *See City of Glendale v. Aldabbagh*, 939 P.2d 418,

15  422 (Ariz. 1997).  Thus, as a matter of law, the Bankruptcy Court could not rely on the *Rooker-*

16  *Feldman* doctrine to give preclusive effect to the *non-final*, *preliminary* injunction against John

17  Lezdey.  *Id.*

18      Second, and moreover, the proceedings in the Arizona State Action have not yet ended.

19  Indeed, according to the docket from the Arizona court, the next status conference is scheduled

20  for September 8, 2008.  Wachter has not only failed to obtain a permanent injunction against Mr.

21  Lezdey, but has continuously delayed the Arizona proceedings by seeking numerous

22  continuances—perhaps fearful of presenting his case against John Lezdey to an Arizona jury

23  given that Arriva suffered a devastating loss in the Florida Federal Action when similar issues

24  were submitted to the jury there.  (Apx. at 310-346).  Thus, because the Arizona State Action has

25  not yet ended, the *Rooker-Feldman* doctrine does not apply.  *See Exxon Mobil*, 544 U.S. at 291.

26      Accordingly, the Bankruptcy Court erred as a matter of law in applying the *Rooker-*

27  *Feldman* doctrine to bar Protease and Sonoran from filing proofs of claim in bankruptcy court.

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-12-

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

**B.**    **The Bankruptcy Court Could Not Rely Upon The Full Faith And Credit Statute To Give Effect To The Preliminary Injunction Against John Lezdey.**

Just as the Bankruptcy Court could not rely upon the *Rooker-Feldman* doctrine, the Bankruptcy Court also could not rely on the Full Faith and Credit Clause of the Constitution, U.S. CONST. art. IV, § 1, and its implementing statute, 28 U.S.C. § 1738, to give preclusive effect to the preliminary injunction in the Arizona State Action.

The Full Faith and Credit Clause provides:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.  And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be provided, and the Effect thereof.

U.S. CONST. art. IV, § 1.

Title 28 U.S.C. § 1738 provides in relevant part:

> The records and judicial proceedings of any court of any . . . State, Territory or Possession . . . shall have the same full faith and credit in every court within the United States and its Territories and Possession as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.

Section 1738 "requires a federal district court to give the *same*—not more and not less—preclusive effect to a state court judgment as that judgment would have in the state courts of the state in which it was rendered."  *Noel*, 341 F.3d at 1160 (emphasis added).  Under Arizona law, a preliminary injunction does not have preclusive effect.  *See City of Glendale*, 939 P.2d at 422 ("the findings in connection with the preliminary injunction have no preclusive effect and [the plaintiff] may not rely upon them in this action"); *State v. Schallock*, 941 P.2d 1275, 1280 (Ariz. 1997) (recognizing under Arizona law that findings at a preliminary injunction hearing are not sufficient to permit application of the collateral estoppel doctrine) (citation omitted); *Elia v. Pifer*, 977 P.2d 796, 803 (Ariz. Ct. App. 1998) (same).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-13-

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

1    Accordingly, the Bankruptcy Court could not rely on Section 1738 to preclude Protease

2    and Sonoran from filing their claims in Bankruptcy Court as a result of the preliminary injunction

3    entered against John Lezdey in Arizona state court.[4]

4

5    **C.    Protease And Sonoran Cannot Be Barred From Filing Proofs Of Claim By Virtue Of The Preliminary Injunction In The Arizona State Action.**

6    Finally, even if the Bankruptcy Court had legal authority to give effect to the preliminary

7    injunction entered against John Lezdey in the Arizona State Action, that state court injunction

8    cannot bar Protease and Sonoran (as opposed to John Lezdey) from filing proofs of claim in

9    federal bankruptcy court.  In holding otherwise, the Bankruptcy Court committed numerous

10   reversible errors of law.

11   First, the Bankruptcy Court erred in concluding that the preliminary injunction against Mr.

12   Lezdey in the Arizona State Action affected the Bankruptcy Court's jurisdiction to hear proofs of

13   claim filed by Protease and Sonoran in a Chapter 11 proceeding.  It is a well-established general

14   rule of constitutional law that the Supremacy Clause of the United States Constitution prevents

15   states from unilaterally prohibiting federal courts from exercising the jurisdiction which Congress

16   has granted to them.  *See Gen. Atomic Co. v. Felter*, 434 U.S. 12, 15 (1977) (applying rule to *in*

17   *personam* actions); *Donovan v. Dallas*, 377 U.S. 408, 413 (1964) (same); *In re Gruntz*, 202 F.3d

18   1074, 1082 (9th Cir. 2002) (en banc) (finding that the rule "applies even more strongly to federal

19   in rem proceedings under the Bankruptcy Code"); *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311,

20   1315 (9th Cir. 1982) (holding that state law may not control or limit federal diversity

21   jurisdiction).  The Bankruptcy Court has exclusive jurisdiction to determine the claims filed by

22   Protease and Sonoran against Arriva—not the Arizona state court via a preliminary injunction.

23   Accordingly, by giving effect to a state court injunction to bar the filing of proofs of claim which

24

25

26   ────────────────────

[4] And thus for the same reason (as noted previously), *Rooker-Feldman* cannot apply.  *See*
27   *Kougasian*, 359 F.3d at 1143 (*Rooker-Feldman* does not "give greater preclusive effect to state court judgments than the states themselves would give those judgments.  Such super-preclusive
28   effect would violate the requirement of 28 U.S.C. § 1738 . . .").

1  on their face are valid, the Bankruptcy Court acted in derogation of its statutorily mandated

2  jurisdiction under federal law.[5]

3  　　　　The Bankruptcy Court also encroached upon state law.  Protease and Sonoran were not

4  parties to the Arizona State Action and did not engage in any illegal or improper conduct.  In

5  denying the Protease and Sonoran claims, the Bankruptcy Court apparently sought to punish

6  Protease and Sonoran for John Lezdey's purported violation of the preliminary injunction in the

7  Arizona State Action when he signed the proofs of claim.  However, the Bankruptcy Court lacks

8  jurisdiction to punish Mr. Lezdey for a violation of the Arizona state court injunction.  Any such

9  violation may only be redressed by the Arizona state court that issued the injunction.  *See*

10  *Waffenschmidt v. Mackay*, 763 F.2d 711, 716 (5th Cir. 1985) ("Enforcement of an injunction

11  through a contempt proceeding must occur in the issuing jurisdiction because contempt is an

12  affront to the court issuing the order."); *In re Beck*, 283 B.R. 163, 166 (Bankr. E.D. Pa. 2002)

13  ("As a general principle of law, only the court which issues an injunction has the authority to

14  enforce it.").

15  　　　　Indeed, to submit the question of a party's disobedience of a state court order to a

16  bankruptcy court would operate to deprive the court of half of its efficiency.  *See Waffenschmidt*,

17  763 F.2d at 716.  Accordingly, it was improper for the Bankruptcy Court to enforce a state court

18  preliminary injunction in order to punish Mr. Lezdey and thereby deny proofs of claim filed by

19  independent parties which have no connection to that state court injunction (given that Protease

20  and Sonoran are not enjoined parties in the preliminary injunction, and indeed they were not

21  parties to the Arizona State Action when the injunction was issued).

22  　　　　Finally, the Bankruptcy Court encroached upon corporate law in disallowing the Protease

23  and Sonoran Claims.  The Bankruptcy Court never made findings that John Lezdey lacked

24  corporate authority to file the claims (or that he lacked apparent authority).  Indeed, John Lezdey,

---

25  [5] This is yet another reason why the *Rooker-Feldman* doctrine could not apply in this case.  The
26  Ninth Circuit has recognized that the application of the *Rooker-Feldman* doctrine in bankruptcy is
limited by the separate jurisdictional statutes that govern federal bankruptcy law.  *See In re
27  Sasson*, 424 F.3d 864, 871 (9th Cir. 2005) (citing *In re Gruntz*, 202 F.3d 1074, 1079 (9th Cir.
2000) (en banc)).  The doctrine "has little or no application to bankruptcy proceedings that invoke
28  substantive rights under the Bankruptcy Code or that, by their nature, could arise only in the
context of a federal bankruptcy case," as is the case with the Protease and Sonoran Claims.  *Id*.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-15-

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

1    unlike Wachter (who is an insider of Arriva), was exercising his fiduciary duties to protect the

2    rights and interests of Protease and Sonoran, who have valid clams against Arriva.  By giving

3    effect to the Arizona state court injunction, the Bankruptcy Court ignored whether the Protease

4    and Sonoran Claims were valid as a matter of corporate law, regardless of whether a state court

5    injunction could preclude Mr. Lezdey from acting.  *See, e.g., In re Cool Fuel, Inc.*, 117 F. App'x

6    514, 515-16 (9th Cir. 2004) (applying concept of apparent authority).

7        For these additional reasons, the Bankruptcy Court erred in disallowing the Protease and

8    Sonoran Claims on the ground that they were invalidly filed as a result of the preliminary

9    injunction entered in the Arizona State Action.

10   **II.    THE BANKRUPTCY COURT ERRED IN SUSTAINING ARRIVA'S**
11   **        OBJECTIONS TO THE PROTEASE AND SONORAN CLAIMS BECAUSE**
     **        ARRIVA LACKED STANDING TO CHALLENGE MR. LEZDEY'S AGENCY**
12   **        AUTHORITY.**

13       The Bankruptcy Court erred in disallowing the Protease and Sonoran Claims for the

14   additional reason that Arriva lacked standing to challenge Mr. Lezdey's authority to file those

15   claims.

16       Arriva objected to the Protease and Sonoran Claims on the ground that Mr. Lezdey

17   "lacked the authority to file the Sonoran and Protease claims by virtue of the preliminary

18   injunction issued in Arizona."  (Apx. at 220).  Although never designated as such, Arriva's

19   argument clearly was an attack on Mr. Lezdey's authority to execute the claims of Protease and

20   Sonoran as their "agent" under Federal Rule of Bankruptcy Procedure 3001(b).  Fed. R. Bankr. P.

21   3001(b) ("A proof of claim shall be executed by the creditor or the creditor's authorized agent

22   . . . .").  Arriva does not have standing under Rule 3001(b) to make such a challenge to Mr.

23   Lezdey's agency relationship with Protease and Sonoran.

24       As detailed above, Arriva was not a party to the Arizona State Action and its resulting

25   injunction.  (Apx. at 161-176, 310).  Wachter, one of three plaintiffs in that case, obtained a

26   preliminary injunction against John Lezdey under which Mr. Lezdey was enjoined from taking

27   any action on behalf of Sonoran and Protease without Wachter's "express consent."  (Apx. at

28   359).  There is no question that Wachter (the plaintiff in the Arizona State Action) is the intended

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-16-

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

1   beneficiary of the preliminary injunction enjoining Mr. Lezdey from "acting or speaking" "on

2   behalf of Protease or Sonoran without [Dr. Wachter's] express consent." (Apx. at 359). There is

3   also no dispute that Arriva was not an intended beneficiary of the preliminary injunction, and thus

4   the injunction does not require Mr. Lezdey to obtain Arriva's consent before acting on behalf of

5   Protease and Sonoran. Indeed, Arriva has expressly admitted that the injunction only calls for

6   Wachter's consent. (Apx. at 221). Despite the fact that Arriva is not protected by the preliminary

7   injunction in the Arizona State Action, the Bankruptcy Court sustained Arriva's objection based

8   on the argument that Mr. Lezdey lacked "authority" to file the Protease and Sonoran Claims

9   because he never obtained the consent required under the injunction. (Apx. at 517-518).

10      It is clear that the only conceivable basis upon which Arriva has attacked Mr. Lezdey's

11   authority to file the Protease and Sonoran Claims in this bankruptcy case is Arriva's status as a

12   Chapter 11 Debtor (as opposed to its status as a beneficiary of the Arizona preliminary

13   injunction). However, under Rule 3001(b), such status alone is not sufficient to confer on it

14   standing to attack Mr. Lezdey's agency authority. *See Gens v. Resolution Trust Corp.*, 112 F.3d

15   569, 574 (1st Cir. 1997).

16      In *Gens*, the Chapter 11 debtor objected to the creditor's proof of claim, which had been

17   filed by the creditor's agent, on the grounds that a federal regulation prohibited the agency

18   relationship. *Id*. at 571-72, 574. The court examined the regulation, but determined that the

19   debtor did not fall within the intended class of beneficiaries. *Id*. at 574. The court declared that

20   the debtor "must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on

21   the legal rights or interests of third parties." *Id*. (internal quotations and citation omitted).

22   Moreover, the debtor in *Gens* failed to show that Congress intended to confer standing on the

23   Chapter 11 debtor to enforce the regulation. *Id*. Therefore, the court held that the debtor did not

24   have standing under Rule 3001(b) to attack the agency authority of the person who filed the proof

25   of claim on the creditor's behalf, and that the claim could not be disallowed for that reason. *Id*.

26      Similarly, in this Chapter 11 case, Arriva attacked Mr. Lezdey's agency authority under

27   3001(b) solely on the basis of the language in the Arizona preliminary injunction prohibiting Mr.

28   Lezdey from acting on behalf of Protease or Sonoran without the consent of *Wachter*. (Apx. at

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-17-

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

221-22). Here, the Arizona injunction was intended to benefit Wachter, who was *not* the debtor in this bankruptcy case. Furthermore, Arriva failed to demonstrate (let alone even argue) that it is entitled to receive the benefit of the Arizona injunction. Therefore, Arriva is not permitted to rest its objection to the Protease and Sonoran Claims on the legal rights or interests of Wachter. Just as the debtor in *Gens* lacked standing to attack the agent's authority to file the creditor's proof of claim, so too does Arriva lack standing in this case under Rule 3001(b) to attack Mr. Lezdey's agency authority to file the claims on behalf of Protease and Sonoran.

The Bankruptcy Court was required to address whether Arriva had standing to make its objections, but it failed to do so. For this addition reason, the Bankruptcy Court erred in disallowing the Protease and Sonoran Claims.

**III.   THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW TO THE EXTENT IT HELD THAT PROTEASE AND SONORAN WERE COLLATERALLY ESTOPPED FROM RAISING ALLEGATIONS OF BURGLARY AND THEFT OF INTELLECTUAL PROPERTY.**

Finally, the Bankruptcy Court erred to the extent that it held that Protease and Sonoran were collaterally estopped from raising allegations of burglary as a basis for their claims because of an August 2004 "Under Advisement Ruling" entered in the Arizona State Action (well *after* Protease and Sonoran were dismissed as parties) which briefly and tangentially touched upon *different* allegations of burglary and theft than those at issue here.

**A.   The Arizona's Court's August 2004 Hearing Did Not Involve Allegations of Theft Or Burglary By Arriva's Agents.**

In August 2004, the court in the Arizona State Action held a hearing on a motion to dismiss or, alternatively, disqualify Wachter's counsel, Sacks Tierney, for reviewing confidential information after Wachter had hired a surveillance company to conduct "trash diving" into the Lezdey's trash. (Apx. at 252-255). Protease and Sonoran were *not* present at the evidentiary hearing because they had long been dismissed as defendants from the Arizona State Action. (Apx. at 252-255).

On August 24, 2004, the Arizona court issued an "Under Advisement Ruling" in which it denied the motion to disqualify Wachter's counsel. (Apx. at 252-255). In its ruling, the Arizona

1    court noted how Wachter (not Arriva) had hired the Spinelli Agency to investigate the Lezdeys.

2    (Apx. at 253).  The court found as follows: "Spinelli's initial work for Wachter was completed in

3    late 1999, before any trade secrets investigation of the Lezdeys conduct was commenced.  This

4    Court does not believe that Spinelli, its agents or employees were responsible for any break-ins

5    into Lezdey businesses or residences."  (Apx. at 254).  While making this finding, the Arizona

6    court also concluded that it had "little doubt . . . that certain Lezdey properties may have been

7    burglarized," though it did not specify who was responsible.  (Apx. at 253).

8        Notably, the Arizona court during the August 2004 hearing never addressed (or even

9    heard about) allegations regarding whether *Arriva's* agents (as opposed to Wachter's agents) had

10   broken into offices and homes to steal trade secrets, as Protease and Sonoran have alleged in their

11   proofs of claim.  The fact that Protease's and Sonoran's allegations were not addressed is not

12   surprising given that neither Arriva nor Protease nor Sonoran were parties to the Arizona State

13   Action in August 2004 (Apx. at 388), and given that the Arizona court was holding a hearing on

14   the disqualification of Wachter's counsel, *not* a hearing on burglary and theft by Arriva.

15

16

          **B.    Protease And Sonoran Cannot Be Collaterally Estopped From Raising
                  Allegations Of Burglary As A Basis For Their Claims.**

17       Protease and Sonoran are not precluded from filing their proofs of claim as a result of the

18   Arizona court's August 2004 "Under Advisement Ruling."

19       When determining if a state court judgment will have preclusive effect in federal court,

20   federal courts look to the law of the state.  *See Allen v. McCurry*, 449 U.S. 90, 96 (1980).  A prior

21   state court judgment will be given preclusive effect only if (1) the courts of the state which issued

22   the judgment would do so, and (2) the litigants had a full and fair opportunity to litigate their

23   claims and the prior state proceedings otherwise satisfied the applicable requirements of due

24   process.  *See Quinn v. Monroe County*, 330 F.3d 1320, 1329 (11th Cir. 2003).  Under Arizona

25   law, collateral estoppel (or issue preclusion) is applicable when (1) the issue or fact to be litigated

26   was actually litigated in a previous suit, (2) the party against whom the doctrine is to be invoked

27   had a full and fair opportunity and motive to litigate the issue and actually did litigate it, (3) a

28   valid and final decision on the merits was entered, and (4) resolution of the issue was essential to

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-19-

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

1   the decision.  *See Corbett v. Manorcare of Am. Inc.*, 126 P.3d 1027, 1033 (Ariz. 2006); *Chaney*

2   *Bldg. Co. v. City of Tucson*, 716 P.2d 28, 30 (Ariz. 1986).  There is an additional requirement of

3   common identity of parties, or mutuality, when collateral estoppel is being used offensively, as in

4   this case.  *See Standage Ventures, Inc. v. State*, 562 P.2d 360, 364 (Ariz. 1977) (refusing to apply

5   collateral estoppel when appellants were not a party to the judgment they sought to invoke);

6   *Garcia v. Gen. Motors Corp.*, 990 P.2d 1069, 1073 (Ariz. Ct. App. 1999) (holding that non-

7   mutual collateral estoppel is limited to situations involving defensive use of the doctrine).  The

8   findings in the Arizona court's "Under Advisement Ruling" are not entitled to collateral estoppel

9   against Protease and Sonoran for several reasons.

10      First, and most importantly, the allegations set forth in the Protease and Sonoran Claims

11  were never addressed in the Arizona State Action, let alone actually litigated and essential to the

12  court's decision.   In its "Under Advisement Ruling," the Arizona court never addressed

13  allegations regarding how *Arriva's* agents (as opposed to Wachter's agents) had broken into

14  offices and homes to steal trade secrets, as Protease and Sonoran alleged in their proofs of claim.

15  (Apx. at 004-005, 024-025).   Thus, collateral estoppel cannot apply because the issue to be

16  decided in the Protease and Sonoran Claims is not identical to the issue in the prior suit, and thus

17  was not actually litigated.  *See Tucson v. Superior Court*, 798 P.2d 374, 380 (Ariz. 1990) ("For

18  the doctrine of collateral estoppel to be applied, the issue or fact to be precluded must have been

19  the same issue or fact actually litigated.").[6]

20      Second, and additionally, Protease and Sonoran had been dismissed as parties from the

21  Arizona State Action long before the Arizona court's August 2004 hearing, and they are not in

22  privity with any of the parties to the Arizona state action.  Thus, as non-parties, Protease and

23  Sonoran did not have a full and fair opportunity to actually litigate their claims, and collateral

---

[6] Moreover, even the burglary issue that *was* raised during the August 2004 hearing in the
Arizona State Action was addressed only tangentially in connection with the motion to disqualify
counsel.  (Apx. at 252-255).  Thus, even if it had been the identical issue raised in the Protease
and Sonoran Claims (and it clearly was *not*), the resolution of the burglary issue was not
"essential" to the Arizona court's decision on the motion to disqualify before it, and collateral
estoppel could not apply for this additional reason.  *See Chaney*, 716 P.2d at 30 (resolution of the
issue must be "essential to the prior judgment").

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-20-

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

1   estoppel cannot apply for this additional reason.  *See Chaney*, 716 P.2d at 30; *Garcia*, 990 P.2d at

2   1073.[7]

3       Accordingly, the Bankruptcy Court erred to the extent it disallowed the Protease and

4   Sonoran Claims based on collateral estoppel grounds.

5   **IV.    THE PROTEASE AND SONORAN CLAIMS SHOULD BE REMANDED TO THE
        BANKRUPTCY COURT FOR A FULL EVIDENTIARY HEARING ON THE
6       VALUE OF THE CLAIMS FOR PURPOSES OF DISTRIBUTION.**

7       Because the Bankruptcy Court disallowed the Protease and Sonoran Claims, the Court did

8   not determine a value of the claims for purposes of distribution.  Therefore, a reversal of the

9   Bankruptcy Court's order denying the Protease and Sonoran Claims will require the Bankruptcy

10  Court to value the claims for purposes of distribution.[8]  While bankruptcy courts have broad

11  discretion to fashion estimation procedures using "whatever method is best suited to the

12  circumstances," *In re Wallace Bookstore, Inc.,* 317 B.R. 720, 725 (Bankr. E.D. Ky. 2004), courts

13  customarily utilize procedural safeguards such as evidentiary hearings in order to protect the due

14  process rights of the subject creditor.  *See, e.g., In re Wallace Bookstore,* 317 B.R. at 725 (finding

15  "full-blown evidentiary hearing" appropriate); *In re Thomas McKinnon Sec.,* 191 B.R. 976, 979

16  (Bankr. S.D.N.Y. 1996) (allowing each side to present one witness, an expert witness, relevant

17  deposition transcripts and affidavits); *In re Nova Real Estate Inv. Trust*, 23 B.R. 62, 65 (Bankr.

18  E.D. Va. 1982) (hearing eight days of testimony).

19      Therefore, this Court should remand the Protease and Sonoran Claims to the Bankruptcy

20  Court for a full evidentiary hearing on the value of their claims for purposes of distribution.

21  ─────────────

22  [7] Arriva also failed to support its additional argument that the burglary allegations are vague and
    unsubstantiated.  Arriva simply asserted that the burglary allegations "have already failed" in
    Arizona and Florida, when in fact the burglary allegations have *never* been litigated on the merits
23  by Protease or Sonoran.  (Apx. at 229).  Arriva's reference to the Florida Federal Action was
    particularly misguided since Arriva knows full well that no burglary allegations were ever
24  addressed by the Florida jury and that Protease and Sonoran were *never* parties to that litigation
    (and thus they would not have had a full and fair opportunity to actually litigate their claims on
25  the merits).  *See Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co*., 945 So. 2d 1216, 1235
    (Fla. 2006) (citation omitted); *Carnival Corp. v. Middleton*, 941 So. 2d 421, 424 (Fla. App.
26  2006) (citation omitted).

27
    [8] Although the Bankruptcy Court assigned a value of zero to the Protease and Sonoran Claims for
28  voting purposes, the Court never valued the claims for distribution purposes.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-21-                    APPELLANTS' OPENING BRIEF
                       Case No. 08-00692-SI; Case No. 08-00693-SI

1

## CONCLUSION

2   The Bankruptcy Court erred in disallowing the Protease and Sonoran Claims in their

3 entirety without leave to amend.  Accordingly, Protease and Sonoran respectfully request that the

4 order of the Bankruptcy Court be reversed and this case remanded to the bankruptcy court for a

5 full evidentiary hearing on the value of their claims for purposes of distribution.

6   RESPECTFULLY SUBMITTED this 5th day of June 2008.

7            Squire, Sanders & Dempsey L.L.P.

8

9            By     */s/ Daniel T. Balmat*
                Daniel T. Balmat

10

11           Attorneys for Appellants
            PROTEASE SCIENCES, INC. AND
            SONORAN DESERT CHEMICALS, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-22-

APPELLANTS' OPENING BRIEF
Case No. 08-00692-SI; Case No. 08-00693-SI

1   SQUIRE, SANDERS & DEMPSEY L.L.P.
     James E. McDonald (admitted *pro hac vice*)
2   Douglas J. Rovens (CA Bar No. 106562)
     Daniel T. Balmat (CA Bar No. 230504)
3   One Maritime Plaza, Third Floor
     San Francisco, CA  94111-3492
4   Telephone:     415.954.0200
     Facsimile:      415.393.9887
5   jmcdonald@ssd.com
     drovens@ssd.com
6   dbalmat@ssd.com

7   Attorneys for Appellants
     PROTEASE SCIENCES, INC. AND SONORAN
8   DESERT CHEMICALS, L.L.C.

9

                        UNITED STATES DISTRICT COURT
10
                      NORTHERN DISTRICT OF CALIFORNIA
11
          On Appeal from the United States Bankruptcy Court
12               for the Northern District of California
                    Hon. Edward D. Jellen
13

14

| | |
|---|---|
| 15   PROTEASE SCIENCES, INC., | Consolidated Case Nos. 08-00692-SI and 08-00693-SI |
| 16           Appellant, | (Appeal from Chapter 11 Bankruptcy Case No. 07-42767) |
| 17     vs. | Related Case Nos. 08-00691-SI; 08-00825-SI; 08-01279-SI; 99-02169-SI. |
| 18   ARRIVA PHARMACEUTICALS, INC., | |
| 19           Appellee. | **E-FILING** |
| 20 | |
| 21   SONORAN DESERT CHEMICALS, L.L.C. | **MANUAL FILING NOTIFICATION OF COMBINED APPENDIX FOR APPEAL NOS. 08-0691, 08-0692, 08-0693 AND 08-0825** |
| 22           Appellant, | |
| 23     vs. | |
| 24   ARRIVA PHARMACEUTICALS, INC., | |
| 25           Appellee. | |
| 26 | |

27

28

1

2

3

**REGARDING:    COMBINED APPENDIX FOR APPEAL NOS. 08-0691, 08-0692, 08-0693, AND 08-0825 BY APPELLANTS PROTEASE SCIENCES, INC. AND SONORAN DESERT CHEMICALS, L.L.C.**

4    This filing is in paper or physical form only, and is being maintained in the case file in the

5    Clerk's office.  If you are a participant in this case, this filing will be served in hard-copy shortly.

6    For information on retrieving this filing directly from the court, please see the court's main web

7    site at http://www.cand.uscourts.gov under Frequently Asked Questions ("FAQ").

8    This filing was not e-filed for the following reason(s):

9    [x]    Voluminous Document (PDF file size larger than the e-filing system allows);

10    [_]    Unable to Scan Documents;

11    [_]    Physical Object (description): _____;

12    [_]    Non-Graphic/Text Computer File (audio, video, etc.) on CD or other media;

13    [_]    Item Under Seal (Exhibit 115 – designated as "Confidential" pursuant to

14    Stipulated Protective Order)

15    [_]    Conformance with the Judicial Conference Privacy Policy (General Order 53); or

16    [_]    Other (description): _____.

17                                    Respectfully submitted,

18    Dated: June 5, 2008                 SQUIRE, SANDERS & DEMPSEY L.L.P.

19

20                                    By:___/s/  Daniel T. Balmat_____
                                          Daniel T. Balmat

21                                    Attorneys for
                                    PROTEASE SCIENCES, INC. AND
22                                    SONORAN DESERT CHEMICALS, L.L.C.

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

On Appeal from the United States Bankruptcy Court
for the Northern District of California
Hon. Edward D. Jellen

| | |
|---|---|
| In re<br><br>ARRIVA PHARMACEUTICALS, INC., a<br>California corporation,<br><br>   Debtor. | CASE NO. 08-0691<br><br>(Appeal from Chapter 11 Bankruptcy Case No.<br>07-42767) |
| PROTEASE SCIENCES, INC.<br><br>   Appellant<br><br>  vs.<br><br>ARRIVA PHARMACEUTICALS, INC.<br><br>   Appellant<br><br>  vs.<br><br>SONORAN DESERT CHEMICALS, L.L.C.<br><br>   Appellant<br><br>  vs.<br><br>ARRIVA PHARMACEUTICALS, INC.<br><br>   Appellee | CASE NOS. 08-0692 and 08-0693<br><br>(Appeal from Chapter 11 Bankruptcy Case No. 07-<br>42767) |
| ALPHAMED PHARMACEUTICALS CORP.<br><br>   Plaintiff<br><br>  vs.<br><br>ARRIVA PHARMACEUTICALS, INC.<br><br>   Defendant. | Case No. 08-0825<br><br>(Appeal from Adversary Proceeding No. 07-4181 in<br>Chapter 11 Bankruptcy Case No. 07-42767 AJ) |

## CERTIFICATE OF SERVICE

| | |
|---|---|
| | Squire, Sanders & Dempsey L.L.P.<br>Douglas J. Rovens (State Bar # 106562)<br>drovens@ssd.com<br>James E. McDonald (admitted *Pro Hac Vice*)<br>*jmcdonald@ssd.com*<br>Daniel T. Balmat (State Bar# 230504)<br>*dbalmat@ssd.com*<br>One Maritime Plaza, Suite 300<br>San Francisco, CA 94111<br>Telephone: +1.415.954.0383<br>Facsimile: +1.415.393.9887<br><br>Attorneys for<br>AlphaMed Pharmaceuticals Corp. |

1

## **CERTIFICATE OF SERVICE**

(Pursuant to Federal Law)

2

3

      I, REGINA ARROYO, am employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action; my business address is One Maritime Plaza, Third Floor, San Francisco, California  94111-3492.  On June 5, 2008, I served the following documents described as:

4

5

6

    **1.**   **APPELLANT ALPHAMED PHARMACEUTICALS CORP.'S OPENING BRIEF IN APPEAL FROM DISALLOWANCE OF PROOF OF CLAIM;**

7

    **2.**   **COMBINED OPENING BRIEF OF APPELLANTS PROTEASE AND SONORAN IN APPEAL FROM DISALLOWANCE OF PROOFS OF CLAIM;**

8

    **3.**   **PLAINTIFF-APPELLANT ALPHAMED'S OPENING BRIEF IN APPEAL FROM BANKRUPTCY ADVERSARY PROCEEDING;**

9

10

    **4.**   **COMBINED APPENDIX FOR APPEAL NOS. 08-0691, 08-0692, 08-0693 AND 08-0825;**

11

    **5.**   **MANUAL FILING NOTIFICATION OF SECOND SUPPLEMENTAL DECLARATION OF COMBINED APPENDIX FOR APPEAL NOS. 08-0691, 08-0692, 08-0693 AND 08-0825  [Appeal Case No. 08-00691];**

12

13

    **6.**   **MANUAL FILING NOTIFICATION OF SECOND SUPPLEMENTAL DECLARATION OF COMBINED APPENDIX FOR APPEAL NOS. 08-0691, 08-0692, 08-0693 AND 08-0825 [Consolidated Appeal Case No. 08-00692 and 08-00693];**

14

15

    **7.**   **MANUAL FILING NOTIFICATION OF SECOND SUPPLEMENTAL DECLARATION OF COMBINED APPENDIX FOR APPEAL NOS. 08-0691, 08-0692, 08-0693 AND 08-0825  [Appeal Case No. 08-00825];**

16

17

was served on the party(ies) as set forth on the attached service list:  **SEE ATTACHED SERVICE LIST**

18

Service was accomplished as follows:

19

☒    Via United States District Court Electronic Filing Service on the party(ies) as set forth on the attached service list.

20

**AND/OR**

21

☒    BY U.S. MAIL, According to Normal Business Practices.  On June 6, 2008, at my place of business at the above address, I sealed the above document(s) in an envelope addressed to the above, and I placed that sealed envelope for collection and mailing following ordinary business practices, for deposit with the U.S. Postal Service.  I am readily familiar with the business practice at my place of business for the collection and processing of correspondence for mailing with the U.S. Postal Service.  Correspondence so collected and processed is deposited the U.S. Postal Service the same day in the ordinary course of business, postage fully prepaid.

22

23

24

25

26

      I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  Executed on June 5, 2008, at San Francisco, California.

27

          By:      */s/ Regina Arroyo*

28

                  Regina Arroyo

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

      CERTIFICATE OF SERVICE

# SERVICE LIST

**USDC APPEAL CASE NO. 08-00691:**

Michael H. Ahrens
Ori Katz
Michael Magayne Lauter
Timothy Charles Perry
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111-4106
Telephone:      (415) 434-9100
Facsimile:      (415) 434-3947

*Attorneys for Appellee*
*Arriva Pharmaceuticals Inc.*

Tracy Green
Michael D. Cooper
Wendel Rosen Black & Dean, LLP
1111 Broadway, 24th Floor
Oakland, CA  94607-4036

*Attorneys for*
*Official Committee of Creditors Holding Unsecured*
*Claims*

**USDC APPEAL CASE NO. 08-00692:**

Michael H. Ahrens
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111-4106
Telephone:      (415) 434-9100
Facsimile:      (415) 434-3947

*Attorneys for Appellee*
*Arriva Pharmaceuticals Inc.*

**USDC APPEAL CASE NO. 08-00693:**

Michael H. Ahrens
Ori Katz
Michael Magayne Lauter
Timothy Charles Perry
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111-4106
Telephone:      (415) 434-9100
Facsimile:      (415) 434-3947

*Attorneys for Appellee*
*Arriva Pharmaceuticals Inc.*

United States Trustee
Office of the U.S. Trustee
1301 Clay Street, Suite 690N
Oakland, CA  94612

**USDC APPEAL CASE NO. 08-00825:**

Michael H. Ahrens
Ori Katz
Michael Magayne Lauter
Timothy Charles Perry
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111-4106
Telephone:      (415) 434-9100
Facsimile:      (415) 434-3947

*Attorneys for Appellee*
*Arriva Pharmaceuticals Inc.*