ORIGINAL

1  Squire, Sanders & Dempsey L.L.P.
   Douglas J. Rovens (State Bar # 106582)
2  *drovens@ssd.com*
   Daniel T. Balmat (State Bar # 230504)
3  *dbalmat@ssd.com*
   One Maritime Plaza, Suite 300
4  San Francisco, CA 94111
   Telephone: +1.415.954.0383
5  Facsimile: +1.415.393.9887

6  Gunster, Yoakley & Stewart, P.A.
   James E. McDonald (admitted *Pro Hac Vice*)
7  *jmcdonald@gunster.com*
   One Biscayne Tower, Suite 3400
8  2 South Biscayne Boulevard
   Miami, FL 33131
9  Telephone: 305-376-6000
   Facsimile: 305-376-6010
10
   Attorneys for
11 PROTEASE SCIENCES, INC. AND
   SONORAN DESERT CHEMICALS, LLC.
12

13            UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15

16 PROTEASE SCIENCES, INC.,                    Case No. 08-0692 (SI) and 08-0693 (SI)

17            Appellant,              **JOINT NOTICE OF APPEAL TO THE
                                      UNITED STATES COURT OF APPEALS
18      vs.                           FOR THE NINTH CIRCUIT**

19 ARRIVA PHARMACEUTICALS, INC.,      The Honorable Susan Illston

20            Appellee,

21 SONORAN DESERT CHEMICALS,
   LLC,
22

23            Appellant,

24      vs.

25 ARRIVA PHARMACEUTICALS, INC.,

26
              Appellee.
27

28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

JOINT NOTICE OF APPEAL TO THE UNITED STATES
COURT OF APPEALS FOR THE NINTH CIRCUIT

1  TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2        NOTICE IS HEREBY GIVEN that Appellants Protease Sciences, Inc. and Sonoran Desert

3  Chemicals, LLC ("Appellants"), pursuant to Rule 3(b)(1) of the Federal Rules of Appellate

4  Procedure (permitting joint or consolidated appeals), hereby appeal from the Order Re:

5  Bankruptcy Appeals and the final Judgment entered in this action on August 1, 2008 (Docket

6  Entry Nos. 22 and 23, respectively, in Case No. 08-0692; and Docket Entry Nos. 21 and 22,

7  respectively, in Case No. 08-0693), and from any and all judgments, orders, decisions, and

8  rulings wholly or partly adverse to Appellants merged into that Judgment. True and correct

9  copies of the above-referenced docket entries are attached hereto as Exhibits A, B, C, and D,

10  respectively. This joint appeal is made to the United States Court of Appeals for the Ninth

11  Circuit.

12

13  Dated: August 19, 2008                  Respectfully submitted,

14

15                                    By:_____

16                                         Daniel T. Balmat

16                   Attorneys for Appellants

17                   PROTEASE SCIENCES, INC. AND
                  SONORAN DESERT CHEMICALS, LLC.

18

19

20

21

22

23

24

25

26

27

28

-1-      JOINT NOTICE OF APPEAL TO THE UNITED STATES
COURT OF APPEALS FOR THE NINTH CIRCUIT

1

2

3

4

5              IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7   In re
    ARRIVA PHARMACEUTICALS, INC., a          Nos. C 08-691 SI, C 08-692 SI, C 08-693 SI, C
8   California Corporation,                   08-825 SI
                      Reorganized Debtor-Appellee.
9
                                        /
10
    PROTEASE SCIENCES, INC.,                      **ORDER RE: BANKRUPTCY APPEALS**
11                 Claimant-Appellant,
        v.
12
    ARRIVA PHARMACEUTICALS, INC.,
13             Debtor-Appellee.
                                        /
14
    SONORAN DESERT CHEMICALS, INC.,
15                 Claimant-Appellant,
        v.
16
    ARRIVA PHARMACEUTICALS, INC.,
17             Debtor-Appellee.
                                        /
18
    ALPHAMED PHARMACEUTICALS CORP,
19
                 Plaintiff-Appellant,
20      v.

21  ARRIVA PHARMACEUTICALS INC,

22             Defendant-Appellee.
                                        /
23

24

25        On July 24, 2008, the Court heard argument on these four related bankruptcy appeals. After

26  consideration of the record and the parties' arguments, the Court AFFIRMS the Bankruptcy Court.

27

28


                              **EXHIBIT A**

*United States District Court*
*For the Northern District of California*

**BACKGROUND**

Now before the Court are four related appeals from four orders of the Bankruptcy Court. These bankruptcy appeals arise from a dispute between two former business partners, Dr. Allan Wachter ("Wachter"), a medical doctor, and John Lezdey ("Lezdey"), a patent attorney. In the early 1990s, Wachter and Lezdey invented and jointly acquired patents for medical technologies related to the treatment of inflammation. In 1992, Wachter and Lezdey transferred their interests in the patents to Sonoran Desert Chemicals Limited ("Sonoran"). Sonoran is 50% owned by Wachter through two holding companies, Nathan M. Technologies and Seth Chemicals, and 50% owned by Lezdey, also through two holding companies, J.L. Technology LP and J & D Science, Inc. Shortly after forming Sonoran, Wachter and Lezdey formed Protease Sciences, Inc. ("Protease") and authorized Protease to serve as Sonoran's agent for, among other things, negotiating and entering into licensing agreements on behalf of Sonoran. Protease was originally owned 50% by Wachter and his family and 50% by Lezdey and his family.

On April 16, 1998, Protease entered into a purported License Agreement with debtor Arriva Pharmaceuticals, Inc. ("Arriva"), then known as AlphaOne Pharmaceuticals, under which Protease granted Arriva exclusive license to utilize the Sonoran patents in specified medical fields. The validity of the Protease/Arriva license is one of the central disputes giving rise to numerous lawsuits between Wachter and Lezdey. Wachter alone signed the agreement on behalf of Protease, but Arriva has contended that Lezdey advised and approved the execution of the agreement. Lezdey, on the other hand, has alleged that the agreement was unlawfully executed without his knowledge or consent.

AlphaMed Pharmaceuticals ("AlphaMed") is the final relevant party to the dispute. AlphaMed was formed by Lezdey and his family in 1999. In the same year, AlphaMed purportedly received a license from Protease for its patents. Arriva has alleged that the Protease/AlphaMed license is invalid and violates the terms of the Protease/Arriva exclusive licensing agreement.

These bankruptcy appeals are the latest in a number of lawsuits between Alphamed, Arriva, and individuals involved with both corporations; these lawsuits include (1) a 1999 case filed in Arizona state court by Wachter against Lezdey, Lezdey's wife and sons, and others, regarding the ownership of a patent license; (2) a 1999 lawsuit filed by Arriva in this Court, which was stayed during the pendency

2

1  of the Arizona litigation; (3) a 2003 lawsuit filed by AlphaMed in Florida district court, which resulted

2  in a $78 million jury verdict in favor of AlphaMed; the district court entered judgment as a matter of

3  law in favor of Arriva, and the case is now on appeal in the Eleventh Circuit; and (4) a 2007 lawsuit

4  filed by John Lezdey in Nevada state court, which was automatically stayed due to Arriva's bankruptcy

5  case. These other lawsuits are relevant to the bankruptcy appeals in a variety of ways, some discussed

6  below.

7

8  **I.    Bankruptcy proceedings below and instant appeals**

9       On August 29, 2007, reorganized debtor-appellee Arriva Pharmaceuticals, Inc. ("Arriva") filed

10  a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The first appeal concerns a

11  proof of claim filed by AlphaMed in the amount of $78 million, which was the amount of the vacated

12  Florida jury verdict referenced in footnote 1 *supra*. The Bankruptcy Court disallowed the claim based

13  upon the Florida court's entry of judgment as a matter of law. The second appeal relates to an adversary

14  complaint that Alphamed filed in the Bankruptcy Court and which sought a determination that the

15  Protease/Arriva license was not the property of the estate. In an order dated January 11, 2008, the

16  Bankruptcy Court dismissed AlphaMed's complaint with prejudice on the ground that AlphaMed lacked

17  standing to seek declaratory relief.

18       The other two appeals relate to proofs of claim filed by Protease Sciences, Inc. ("Protease") and

19  Sonoran Desert Chemicals LLC ("Sonoran"). Protease filed a claim in the amount of $30 million, AA

20  004, and Sonoran filed a claim in an "undetermined" amount. AA 024. Each proof of claim was signed

21  only by John Lezdey as "President" of each entity. The bases of the Protease and Sonoran claims were

22  the same:

23       1.    An action has been filed in Nevada against Arriva et al related to the findings of
24             the jury in the Miami lawsuit of AlphaMed Pharmaceuticals vs. Arriva. The
                enclosed jury findings are attached.

25       2.    Arriva agents have broken in offices and homes wherein trade secrets were
26             stored which were stolen. The trade secrets appeared in Arriva's patent
                applications.

27       3.    Arriva paid Wachter to file lawsuits to harass the company and to waste its assets
28             as per Arriva/Wachter agreement which has been filed in this court.

AA 005, 025.

On December 13, 2007, the Bankruptcy Court disallowed the Protease and Sonoran proofs of claim, and alternatively estimated them at zero. In so ruling, Judge Jellen stated:

> [T]he omnibus objection will be sustained as to Protease [PSI]. The record is clear that Mr. Lezdey filed the claim on behalf of Protease. He filed it in violation of a preliminary injunction. I do not believe that the injunction in any way restricts or limits Federal Courts or Federal Court jurisdiction.
>
> All it does is restrict Mr. Lezdey from what he can do on behalf of Protease. And the answer is that he can't do anything. And that was a matter of nonbankruptcy state law as to what his authority is, Mr. Lezdey's authority, as to Protease.
>
> And so I reject the argument that not letting him file the claim for Protease is in derogation of any Federal jurisdiction.
>
> For the exact same reason I sustain the omnibus objection as to Sonoran.

AA 517:25-518:14.

On December 12, 2007, Arriva filed its Reorganization Plan. On January 8, 2008, AlphaMed filed an objection to the confirmation of the Plan. On January 16 and 17, 2008, the Bankruptcy Court held a full trial on plan confirmation, during which attorneys for Arriva and AlphaMed examined two witnesses. Arriva's Plan received 100% approval from the voting creditors. *Id.* On January 30, 2008, the Bankruptcy Court entered the Order Confirming Debtor's Fourth Amended Chapter 11 Plan of Reorganization. The Plan expressly addresses the possibility that the Eleventh Circuit will reverse the Florida district court's order granting judgment as a matter of law to Arriva. The Plan establishes a reserve for disputed claims, including AlphaMed's claim presently on appeal to the Eleventh Circuit. In confirming the Plan, the Bankruptcy Court found, "[s]uch a reserve will enable the Debtor to perform its duties under the Plan [as to division of funds for creditors] in the event of a successful appeal by AlphaMed in the Eleventh Circuit."

## II.    Arizona state lawsuit: *Wachter et al. v. John Lezdey et al.*, No. CV 99-9334 (Superior Court of Arizona, Maricopa County)

In May 1999, Wachter and two business entities, Seth Chemicals Inc., and Nathan M. Technologies LLP, filed suit against Lezdey, his wife Noreen Lezdey, his sons Darren and Jarett Lezdey, and business entities associated with the Lezdeys: J & D Science Inc., J.L Technology Limited

4

1 Partnership, Sonoran Desert Chemicals LLP, and Protease Sciences Inc. AA 310.

2     In February 2000, following an evidentiary hearing attended by John Lezdey, the Arizona court

3 issued a preliminary injunction that prohibited Lezdey, his sons, J & D Science Inc. and J.L. Technology

4 Limited Partnership from "acting or speaking, or purporting to act or speak, on behalf of Protease or

5 Sonoran without Plaintiffs' expressed consent." AA 358.[1] The preliminary injunction also prohibited

6 the defendants from contacting any of Arriva's potential business partners and investors or otherwise

7 interfering with Arriva's business operations. AA 358.

8     The Arizona court issued extensive Findings of Fact along with its preliminary injunction order.

9 AA 347-59. These findings include:

10       •   "Lezdey knew the material terms and conditions of the [Protease/Arriva] License Agreement, advised Wachter that the Agreement was valid, and approved Wachter's execution thereof." AA 353 ¶ 41

12       •   The Protease/Arriva license is "valid and enforceable." AA 356 ¶ 61

13     In November and December 2000, the Arizona Superior Court added to its finding through an

14 amendment to the preliminary injunction. AA 178-81. The court further found:

15       •   "Michael Weber, Esq., acting for John, Jarett and Darren Lezdey, formed AlphaMed Pharmaceuticals, Inc. in June of 1999. Initial Stockholders included Jarett Lezdey, Darren Lezdey, Michael Weber. The Board of Directors initially included John, Jarett, and Darren Lezdey, and Michael Weber."

18       •   "In September of 1999, without corporate authority to do so, , the Lezdeys and Michael Weber caused there to be created a purported License Agreement from Protease Sciences, Inc., to AlphaMed Pharmaceuticals, Inc., related to certain patents which were then licensed to Protease from Sonoran Desert Chemicals Limited Liability Company. This purported License Agreement was executed by John Lezdey, purporting to act for Protease, and by Jarett Lezdey, acting for AlphaMed Pharmaceuticals, Inc."

22       •   "On 11/22/99, John Lezdey testified untruthfully in his deposition in his action that he was not on the Board of Directors of AlphaMed and that AlphaMed did not then (purport) to have a License Agreement from Protease."

24       •   "The existence of the purported 9/99 License Agreement to AlphaMed from Protease (and the existence of a second purported 3/01/00 License Agreement between the same entities) was concealed from Plaintiffs' counsel until certain depositions of the Lezdeys held on 8/14/00 in Tampa, Florida."

26 AA 179-80.

27

28     [1] Protease and Sonoran were dismissed as defendants prior to the hearing on the preliminary injunction. AA 388.

United States District Court
For the Northern District of California

5

1    Following a series of delays, including an unsuccessful attempt by Lezdey to have the case

2 removed to a federal court in Arizona, a bench trial took place in January 2002. AA 162-63. Despite

3 repeated advance notice, neither Lezdey, his sons, his wife, nor their counsel attended the trial. AA 163.

4 In addition, in the month preceding the trial, the Arizona court entered a liability judgment against

5 Lezdey's sons as a sanction for their failure to appear for depositions. AA 364, 381. The trial against

6 Lezdey's sons, therefore, was on the issue of damages only. Another factor complicating the trial was

7 Lezdey's declaration of bankruptcy on the day immediately preceding the trial's commencement,

8 thereby automatically staying the case against him. AA 163. Notwithstanding these complications, the

9 court conducted a bench trial against Lezdey's sons (on damages only), his wife Noreen and J.L.

10 Technology.[2] The trial included multiple hours of witness testimony and the introduction of almost 300

11 exhibits.

12    On February 22, 2002, the Arizona Court issued a permanent judgment against Lezdey's sons

13 and J.L. Technology.[3] AA 162-176. The order made the preliminary injunction permanent as to these

14 defendants, and permanently enjoined those parties "and any other persons or entities acting in concert

15 with them" from "acting or speaking, or purporting to act or speak, on behalf of" Protease or Sonoran

16 without Dr. Wachter's "express written consent." AA 175. The permanent injunction also enjoined the

17 same parties "and any other persons or entities acting in concert with them" from "taking any actions

18 in any capacity to give effect to (or to draw to themselves or any entity, including AlphaMed

19 Pharmaceuticals, Inc., any benefit from) the invalid License Agreements between" Protease and

20 AlphaMed." AA 175. The order stated that the permanent injunction did not apply to John Lezdey or

21 J.D. Science, Inc. because those defendants were in bankruptcy proceedings, but that "[t]he Preliminary

22 Injunction, as amended on November 27, 2000, remains in effect against John Lezdey and J & D

23 Science, Inc." AA 163. The court awarded Wachter $17.4 million in compensatory and punitive

24 damages, and reiterated its finding that the Protease/Arriva license was "valid and enforceable" and

25

26    [2] Lezdey's other holding company, J & D Science, was not a party to the trial, having also filed
for bankruptcy in the week prior to trial.
27

28    [3] The Arizona Superior Court also entered judgment against Lezdey's wife Noreen. This
judgment was vacated on appeal.

United States District Court
For the Northern District of California

6

1 remained "fully in effect." AA 168, 171. Lezdey's sons and J.L. Technology unsuccessfully appealed
2 the Arizona judgment and permanent injunction.

3       As a result of the bankruptcy stay, John Lezdey was not a direct party to the Arizona trial, the
4 final judgment or the permanent injunction.[4]

**III.   California federal lawsuit: *Arriva Pharmaceuticals, Inc. v. Sonoran Desert Chemicals LLC et al.*, C 99-2169 (N.D. Cal.)**

In May 1999, Arriva filed a complaint before this Court, naming seven defendants: Lezdey, Lezdey's two sons (Jarrett and Darren Lezdey), Sonoran, Protease, and Lezdey's two holding companies, J&D Science and J.L. Technology. After this Court denied Arriva's motion for a temporary restraining order, the parties agreed in December 1999 to a stay of the federal action pending the outcome of the related Arizona case. The parties noted that the Arizona court was adjudicating issues related to the validity of the Protease/Arriva license, and that those issues could have a significant impact on the federal California case.

By order filed July 6, 2006, this Court granted Arriva's motion to dismiss the defendants' counterclaim for declaratory relief. AA 183-96. The Court noted that the granting of declaratory relief is discretionary, and that under the factors articulated in *Brillhart v. Excess Insurance Company*, 316 U.S. 491, 495 (1942) – avoidance of duplicative litigation, avoidance of needlessly determining issues of state law, and discouragement of forum shopping – the defendants' declaratory relief counterclaim should be dismissed. The Court found that the "Protease/Arriva license issue has already been extensively litigated in the Arizona court, and that any litigation in this court would be duplicative. The license's validity was a specific finding in the court's final judgment and permanent injunction against Lezdey's sons and J.L. Technology and in its preliminary injunction order against Lezdey." AA 190. The Court made no finding as to the collateral estoppel effect of the Arizona court's findings. AA 192.

The Court also held that Sonoran's counterclaims should be dismissed because Lezdey lacked the capacity to file those counterclaims because Sonoran did not have Wachter's authorization to do so.

---

[4] Lezdey was, however, indirectly a party to the trial and its result as a co-owner of J.L. Technology LP.

7

1  AA 194. Arriva argued that Sonoran, by the terms of its own Operating Agreement and the rulings of

2  the Arizona court, could only lawfully bring a counterclaim with the consent of Wachter, and that such

3  authorization was lacking. AA 194. The defendants did not contest these facts, and instead argued that

4  the Court implicitly rejected the lack of capacity argument when it granted the defendants leave to file

5  their counterclaims. However, the Court rejected that argument, noting that providing leave to file a

6  claim is not a decision on that claim's merits. Because defendants did not contest the key facts

7  presented by Arriva, the Court concluded that Sonoran lacked the capacity to sue without Wachter's

8  consent.

**IV.  Florida federal lawsuit, *AlphaMed Pharmaceuticals Corp. v. Arriva Pharmaceuticals Inc. & Spinelli Corp.*, No. 03-20078 CV (S.D. Fla)**

In 2003, AlphaMed filed suit against Arriva in the United States District Court for the Southern

District of Florida. In 2005, the lawsuit proceeded to trial on three claims: (1) misappropriation of trade

secrets; (2) tortious interference with an advantageous business relationship; and (3) common law unfair

competition. *AlphaMed v. Arriva*, 432 F. Supp. 2d 1319, 1329 (S.D. Fla. 2006).[5]

Initially, a jury returned at $78 million verdict in favor of AlphaMed. Although the validity of

the Protease/Arriva license was not an element of any of the causes of action in the Florida litigation,

the jury specially found (and handwrote on the verdict form) that one of Arriva's acts of unfair

competition was the following:

> When AlphaOne/Arriva improperly accepted the signature of Alan [sic] Wachter as
> Protease Science CEO the process of unfair competition began as the Protease Science
> by-laws do not provide for said office and give authority for signing contracts to the
> President.

AA 301-02.

By order filed May 26, 2006, the Florida district court granted Arriva's motion for judgment as

a matter of law on all three claims, finding that AlphaMed had failed to prove damages, a necessary

element to each claim. *AlphaMed v. Arriva*, 432 F. Supp. 2d at 1334, 1352 and 1353. The court held

that AlphaMed's claim linking Arriva's conduct to AlphaMed's alleged lost profit damages was

---

[5] The Florida district court's lengthy opinion granting Arriva's motion for judgment as a matter of law contains a detailed statement of the history between Wachter and Lezdey.

United States District Court
For the Northern District of California

8

1  contingent on a long list of assumptions, and that "[f]ar from demonstrating that each of AlphaMed's

2  'but for' assumptions was established, however, the evidence introduced at trial demonstrated

3  conclusively that many of these assumptions were demonstrably false, prohibited by law or, at the very

4  least, speculative." *Id.* at 1347. The court also granted Arriva's alternative motion for a new trial, and

5  specifically held that the new trial ruling "does not affect the finality of the judgment in Arriva's favor."

6  *Id.* at 1356 n. 54. The court found that the jury had, *inter alia,* failed to follow a jury instructions

7  regarding the litigation privilege because the jury found Arriva liable to AlphaMed for unfair

8  competition based on, *inter alia,* the Arizona litigation. *Id.* at 1356. AlphaMed filed an appeal of the

9  JMOL, and that appeal is currently pending before the United States Court of Appeals for the Eleventh

10  Circuit. According to AlphaMed, oral argument on the appeal is scheduled for August 27, 2008.

11

12                                      **STANDARD OF REVIEW**

13        This Court reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard.

14  Fed. Bankr. R. 8013; *In re Acequia, Inc.,* 787 F.2d 1352, 1357 (9th Cir. 1986). The Court reviews *de*

15  *novo* the Bankruptcy Court's conclusions of law. *See In re Commercial W. Fin. Corp.,* 761 F.2d 1329,

16  1333 (9th Cir. 1985).

17

18                                          **DISCUSSION**

19  **I.    Appeal 08-691: Disallowance of AlphaMed's $78 million proof of claim**

20        AlphaMed filed a proof of claim in Arriva's bankruptcy case based entirely on the overturned

21  $78 million jury verdict from the Florida action. AA 043. The stated basis for the claim is "legal," and

22  attached to the proof of claim form was the overturned jury verdict form. AA 046-058. At a December

23  13, 2007 hearing, the Bankruptcy Court disallowed AlphaMed's claim and alternatively estimated it at

24  zero. AA 518:14-19, 521:7-11. In disallowing AlphaMed's claim, the Bankruptcy Court noted that

25  "this ruling is subject to being revisited in the event that the Florida court ends up finding that

26  AlphaMed does have a valid claim against the debtor." AA 518:17-19. The Bankruptcy Court also

27  granted AlphaMed relief from the automatic stay to pursue its appeal of the JMOL in front of the

28  Eleventh Circuit. AA 512:8-24. The Bankruptcy Court's Order Disallowing Claim of AlphaMed

United States District Court
For the Northern District of California

9

1  Pharmaceuticals Corp. was entered on December 27, 2007. The order states that "This order does not

2  preclude reconsideration under Bankruptcy Code Section 502(j) or otherwise based on further

3  developments in the pending Florida litigation." AA 432.

4        AlphaMed appeals this ruling, contending that the Bankruptcy Court erred by disallowing the

5  claim instead of holding adjudication of the claim in abeyance pending the resolution of the Eleventh

6  Circuit appeal. AlphaMed contends that the Bankruptcy Court should have exercised its discretion

7  under Bankruptcy Rule 3018(a) to temporarily allow AlphaMed's claim for voting purposes while

8  simultaneously holding the determination of the claim in abeyance pending final resolution of the

9  Florida litigation. AlphaMed also argues that holding ruling on the objection to AlphaMed's claim in

10  abeyance would not have impacted voting or confirmation of the plan or reorganization.

11        The Court finds this contention unpersuasive. The Bankruptcy Court lifted the stay to allow

12  AlphaMed to pursue its appeal in the Eleventh Circuit, and the Bankruptcy Court expressly provided

13  in its order that AlphaMed's claim would be revisited pursuant to Bankruptcy Code Section 502(j)[6] if

14  AlphaMed prevailed on appeal. In addition, when the Bankruptcy Court confirmed the Plan, the court

15  also stayed the distribution of the large majority of the unsecured claims pool such that, if AlphaMed

16  prevails on appeal, it may take its pro rata share of that pool along with the other unsecured creditors.

17  SPA 133:9-12; 154-55. Further, delaying adjudication of AlphaMed's claim until the Eleventh Circuit

18  appeal is resolved would have needlessly injected uncertainty into the bankruptcy process. As Arriva

19  notes, the Eleventh Circuit appeal is still pending, and a decision will not be rendered until September

20  2008 at the very earliest.

21        AlphaMed also contends that the Bankruptcy Court erred by holding that the Florida jury's

22  liability findings were overturned. AlphaMed argues that because the Florida district court entered

23  judgment as a matter of law on the sole basis that AlphaMed "failed to properly calculate damages," the

24  jury's findings of liability somehow remain intact. In particular, AlphaMed cites the jury's

25  (handwritten) findings on the verdict form in support of AlphaMed's unfair competition claim, including

26

27        [6] That section provides, in relevant part, that "A claim that has been allowed or disallowed may
28  be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities
   of the case."

United States District Court
For the Northern District of California

1    the jury's finding that "When AlphaOne/Arriva improperly accepted the signature of Alan [sic] Wachter

2    as Protease Science CEO the process of unfair competition began as the Protease Science By-Laws do

3    not provide for said office and give authority for signing contracts to the President." AA 301-02.

4        AlphaMed's reading of the Florida's court's JMOL order is selective and strained. Contrary to

5    AlphaMed's characterization, the Florida court did not simply take issue with AlphaMed's "calculation"

6    of damages; instead, the court held that AlphaMed had entirely failed to prove that it suffered any

7    damages as a result of Arriva's conduct. Because damages were a necessary element to each of

8    AlphaMed's claims, the court entered judgment in favor of Arriva on each claim. The cases cited by

9    AlphaMed are all distinguishable. *See, e.g., Berry v. United States*, 312 U.S. 450 (1941) (district court

10   denied JMOL; appellate court reversed; Supreme Court reversed and affirmed district court, finding

11   evidence sufficient to sustain jury's verdict); *Barber v. Whirlpool Corp.*, 34 F.3d 1268 (4th Cir. 1994)

12   (reversing denial of JMOL as to one claim, affirming denial of JMOL as to second claim, and remanding

13   for new trial on damages because jury verdict did not apportion damages between two claims);

14   *Firestone Tire & Rubber Co. v. Pearson*, 769 F.2d 1471 (10th Cir. 1985) (Firestone appealed denial of

15   JMOL; appellate court remanded for new trial on calculation of damages).

16

17   **II.    Consolidated appeals 08-692 & 08-693: Disallowance of proofs of claim filed by Protease and Sonoran**

18

19       On October 9, 2007, Protease filed a $30 million proof of claim in Arriva's bankruptcy case.

20   AA 004-023. The stated basis for the claim was "contract + bribery" and "3 million shares." AA 004.

21   Attached to the Protease claim is a statement of the claims:

22       1.    An action has been filed in Nevada against Arriva et al relating to the findings
             by the jury in the Miami lawsuit of AlphaMed Pharmaceuticals vs. Arriva. The
23            enclosed jury findings are attached.

24       2.    Arriva agents have broken in offices and homes wherein trade secrets were
             stored which were stolen. The trade secrets appeared in Arriva's patent
25            application.

26       3.    Arriva paid Wachter to file lawsuits to harass the company and to waste its assets
             as per Arriva/Wachter agreement which has been filed in this court.

27   AA 005. Also attached to the Protease claim is a copy of the Protease/Arriva license agreement, AA

28   006-008, an excerpt from the deposition transcript of Brian W. Napper, taken in the Arizona state

11

1   lawsuit, AA 009-010, and the Florida jury's verdict form. AA 011-023.

2       Also on October 9, 2007, Sonoran filed a proof of claim in an "undetermined" amount in
3   Arriva's bankruptcy case. AA 024-042. The stated basis for the claim was "theft of intellectual
4   property" and "bribery." AA 024. The same documents, including the statement of claims, were
5   attached to the Sonoran proof of claim as to the Protease proof of claim. AA 025-042. John Lezdey
6   signed both the Protease and the Sonoran proofs of claim. AA 004, 024.

7       On December 13, 2007, the Bankruptcy Court held a hearing on, *inter alia*, Arriva's objection
8   to the Protease and Sonoran claims, and disallowed the claims in their entirety. AA 469-523. On
9   December 27, 2007, the Bankruptcy Court entered a final order disallowing the Protease and Sonoran
10  claims without leave to amend. AA 435-36, 439-42. The Bankruptcy Court concluded that these claims
11  were invalidly filed because Lezdey violated the preliminary injunction issued by the Arizona state
12  court, which prohibited Lezdey from acting on behalf of Protease and Sonoran. AA 517-18. Judge
13  Jellen stated during the hearing,

14      The record is clear that Mr. Lezdey filed the claim on behalf of Protease. He filed it in
        violation of a preliminary injunction. I do not believe that the injunction in any way
15      restricts or limits Federal Courts or Federal Court jurisdiction.

16      All it does is restrict Mr. Lezdey from what he can do on behalf of Protease. And the
        answer is he can't do anything. And that was a matter of nonbankruptcy state law as to
17      what his authority is, Mr. Lezdey's authority, as to Protease.

18      And so I reject the argument that not letting him file the claim for Protease is in
        derogation of any Federal jurisdiction.
19
        For the exact same reason I sustain the omnibus objection as to Sonoran.
20
    AA 518.
21
22      Protease and Sonoran challenge the Bankruptcy Court's order on numerous grounds. First, they
23  confusingly assert that the Bankruptcy Court erroneously applied the *Rooker-Feldman* doctrine in
24  disallowing the claims. However, by stating that he "did not believe that the injunction in any way
25  restricts or limits Federal Courts or Federal Court jurisdiction," the Bankruptcy Court implicitly
26  disclaimed reliance on the *Rooker-Feldman* doctrine, which is jurisdictional. *See Exxon-Mobil Corp.*
27  *v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) ("*Rooker* and *Feldman* exhibit the limited
28  circumstances in which this Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257,

12

1  precludes a United States district court from exercising subject-matter jurisdiction in an action it would
2  otherwise be empowered to adjudicate . . . .").

3       Instead, the Bankruptcy Court held that Lezdey did not have authority to act on behalf of
4  Protease and Sonoran. The preliminary injunction issued by the Arizona court – which is still in effect
5  and binding on Lezdey – prohibits Lezdey from "acting or speaking, or purporting to speak, on behalf
6  of Protease or Sonoran without [Wachter's] expressed consent." AA 358. The Bankruptcy Court
7  properly recognized that under the terms of the Arizona court's order, Lezdey was without authority to
8  file the claims on behalf of Protease or Sonoran. *Cf. Travelers Cas. & Surety Co. of America v. Pacific*
9  *Gas & Elec. Co.*, 127 S. Ct. 1199, 1205 (2007) ("[W]e have long recognized that the basic federal rule
10  in bankruptcy is that state law governs the substance of claims, Congress having generally left the
11  determination of property rights in the assets of a bankrupt's estate to state law"; this principle "requires
12  bankruptcy courts to consult state law in determining the validity of most claims") (internal citations
13  and quotations omitted).

14       Appellants' other contentions are unavailing. Relying on *Gens v. Resolution Trust Corporation*,
15  112 F.3d 569 (1st Cir. 1997), appellants contend that Arriva lacked standing to challenge Lezdey's
16  authority to file the Protease and Sonoran claims. In *Gens*, the debtor challenged a claim based on a
17  federal regulation that was enacted to protect a class of persons to which the debtor did not belong. *Id*
18  at 574. The court held that the debtor lacked standing because "[n]othing in the statute, the RTC
19  regulation or the attendant case law remotely suggests that Congress or the agency itself intended to
20  confer standing on chapter 11 debtor to enforce the RTC regulation." *Id.* Here, in contrast, the
21  Bankruptcy Court cited a particular decision by a court, and thus there is no such concern about broadly
22  conferring standing.

23       Appellants also contend that the claims were valid under the corporate doctrine of "apparent
24  authority." As an initial matter, the Court notes that the only case appellants rely on for this proposition,
25  *In re Cool Fuel, Inc.*, 117 Fed. Appx. 514 (9th Cir. 1994), is unpublished, and thus appellants may not
26  cite this case as precedent. *See* Fed. R. App. P. 32.1. In any event, *Cool Fuel* is inapposite. In that case,
27  the bankruptcy court held that a debtor was not liable for a tax claim. The Ninth Circuit reversed, and
28  rejected the debtor's argument that it was not liable for the taxes because the debtor's vice-president had

13

United States District Court
For the Northern District of California

1  incurred the tax liability without the knowledge of the debtor. "A principal that 'puts an agent in a
2  position that enables the agent, while apparently acting within his authority, to commit a fraud upon
3  third persons is subject to liability to such third persons for the fraud.'" *Id.* at 516 (quoting *Reusche v.*
4  *California Pacific Title Company*, 231 Cal. App. 2d 731, 738 (1965)). Appellants argue that they should
5  be treated like the debtor in *Cool Fuel* and be bound by Lezdey's signature, and they suggest that
6  Protease and Sonoran were unaware of the Arizona court order. This argument is legally inapt, and it
7  flies in the face of the record, which is replete with evidence showing the connection between Protease,
8  Sonoran, and Lezdey. In *Cool Fuel*, the court held that the principal was liable for the acts of its agents
9  and protected innocent third parties upon whom the agent had committed fraud. In contrast, here there
10 are no such innocent third parties, and instead appellants attempt to use the doctrine to affirmatively
11 sanction the unauthorized acts of its agents.

### III.    Appeal 08-825: AlphaMed adversary proceeding appeal

15     On October 30, 2007, AlphaMed filed a complaint against Arriva in the Bankruptcy Court.
16 AlphaMed's complaint requested that the Bankruptcy Court determine that the Protease/Arriva license
17 was not part of Arriva's bankruptcy estate. AA 059. AlphaMed's complaint alleged that it "is a creditor
18 of the Debtor, and has an interest in the intellectual property that is the subject of the purported license
19 agreement . . . ." AA 060. AlphaMed claims to be a creditor based upon the jury's findings in the
20 Florida case. AA 066. AlphaMed's complaint alleged that the "Debtor asserts an interest in certain
21 property that is owned by Lezdey as inventor, Sonoran and by AlphaMed by assignment." AA 061.
22 However, in its opposition to Arriva's motion to dismiss the adversary complaint, AlphaMed
23 affirmatively disclaimed an interest in a judicial determination that it owned the Protease license:
24 "AlphaMed does not seek a determination that the License is the property of AlphaMed; it seeks a
25 declaration that the License is not property of this estate." AA 274.

26     The Bankruptcy Court granted Arriva's motion to dismiss AlphaMed's adversary complaint.
27 The Bankruptcy Court cited three independent bases for the dismissal: (1) AlphaMed lacked standing
28 because it failed to allege a particularized injury; (2) the *Rooker-Feldman* doctrine; and (3) the Arizona

14

United States District Court
For the Northern District of California

court's resolution of the validity of the Protease license precluded AlphaMed's adversary complaint. With regard to AlphaMed's lack of standing, the Bankruptcy Court found that AlphaMed did not allege particularized injury because AlphaMed was "not trying to quiet their title to anything. In fact, they disclaim any intent of trying to quiet their own title to an asset against the claim of the estate. They're not even seeking a ruling as to who, if anyone, might own the [Protease/Arriva] license." AA 514.

The Court finds the Bankruptcy Court properly dismissed AlphaMed's complaint. AlphaMed expressly stated that it did not seek a judicial determination that it owned the Protease license, and thus did not identify any particularized injury to AlphaMed. As the Bankruptcy Court noted,

> If there were standing to assert such a cause of action it would lie in every single creditor in the estate. And the law is not every single creditor in the estate has the right to prosecute actions to determine what is and isn't property of the estate, rather under Bankruptcy Code Section 323(a), the trustee is the representative of the estate.

AA 515. This assessment is consistent with Ninth Circuit case law, which holds that "11 U.S.C. § 323 vests the bankruptcy trustee with the exclusive right to sue on behalf of the bankruptcy estate." *Estate of Spirtos v. One San Bernadino County Superior Court Case Numbered SPR 02211*, 443 F.3d 1172 (9th Cir. 2006); *In re Parmetex, Inc.*, 199 F.3d 1029 (9th Cir. 1999) (creditor has standing to bring a claim belonging to the estate where trustee has stipulated that creditor could sue on trustee's behalf).

*Committee of Tort Litigants v. The Catholic Diocese of Spokane*, Case No. 05-0274, (E.D. Wash. Jan. 24, 2006), is distinguishable. In *Catholic Diocese*, the court permitted a creditor's committee to bring an action seeking a declaration that diocesan property was part of the bankruptcy estate. Here, there was no allegation that the debtor was doing harm to the bankruptcy estate by excluding property from the estate. Instead, AlphaMed wanted a declaration that the Protease/Arriva license was *not* property of the bankruptcy estate, but did not seek a declaration the license was the property of AlphaMed. While this was no doubt a tactical decision based on a desire to avoid any collateral estoppel or claim preclusion consequences of the prior Florida and Arizona litigation, it was nevertheless a decision made by AlphaMed on which the Bankruptcy Court properly relied in dismissing this action. As the claim was presented, AlphaMed lacked standing.

///

15

1

**CONCLUSION**

2        For the foregoing reasons and for good cause shown, the Court hereby AFFIRMS the

3    Bankruptcy Court in these four related appeals.

4

5    **IT IS SO ORDERED.**

6

7    Dated: August 1, 2008

                                                    SUSAN ILLSTON
8                                                   United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re
ARRIVA PHARMACEUTICALS, INC., a
California Corporation,
              Reorganized Debtor-Appellee.

_____/

PROTEASE SCIENCES, INC.,
              Claimant-Appellant,
    v.

ARRIVA PHARMACEUTICALS, INC.,
              Debtor-Appellee.
_____/

SONORAN DESERT CHEMICALS, INC.,
              Claimant-Appellant,
    v.

ARRIVA PHARMACEUTICALS, INC.,
              Debtor-Appellee.
_____/

ALPHAMED PHARMACEUTICALS CORP,

              Plaintiff-Appellant,
    v.

ARRIVA PHARMACEUTICALS INC,

              Defendant-Appellee.
_____/

Nos. C 08-691 SI, C 08-692 SI, C 08-693 SI, C
08-825 SI

**JUDGMENT RE: BANKRUPTCY
APPEALS**

    This Court has affirmed the Bankruptcy Court in these four related bankruptcy appeals.
Judgment is entered accordingly.

    **IT IS SO ORDERED AND ADJUDGED.**

Dated: August 1, 2008

                                    SUSAN ILLSTON
                                    United States District Judge

**EXHIBIT B**

1

2

3

4

5              IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7    In re
     ARRIVA PHARMACEUTICALS, INC., a              Nos. C 08-691 SI, C 08-692 SI, C 08-693 SI, C
8    California Corporation,                        08-825 SI
                    Reorganized Debtor-Appellee.
9

     _____/
10
     PROTEASE SCIENCES, INC.,                      **ORDER RE: BANKRUPTCY APPEALS**
11                  Claimant-Appellant,
           v.
12
     ARRIVA PHARMACEUTICALS, INC.,
13                  Debtor-Appellee.
                                                 /
14
     SONORAN DESERT CHEMICALS, INC.,
15                  Claimant-Appellant,
           v.
16
     ARRIVA PHARMACEUTICALS, INC.,
17                  Debtor-Appellee.
                                                 /
18
     ALPHAMED PHARMACEUTICALS CORP,
19
                    Plaintiff-Appellant,
20         v.

21   ARRIVA PHARMACEUTICALS INC,

22                  Defendant-Appellee.
                                                 /
23

24

25         On July 24, 2008, the Court heard argument on these four related bankruptcy appeals.  After

26   consideration of the record and the parties' arguments, the Court AFFIRMS the Bankruptcy Court.

27

28

                              **EXHIBIT C**

United States District Court
For the Northern District of California

1

**BACKGROUND**

2       Now before the Court are four related appeals from four orders of the Bankruptcy Court. These
3   bankruptcy appeals arise from a dispute between two former business partners, Dr. Allan Wachter
4   ("Wachter"), a medical doctor, and John Lezdey ("Lezdey"), a patent attorney.  In the early 1990s,
5   Wachter and Lezdey invented and jointly acquired patents for medical technologies related to the
6   treatment of inflammation.  In 1992, Wachter and Lezdey transferred their interests in the patents to
7   Sonoran Desert Chemicals Limited ("Sonoran").  Sonoran is 50% owned by Wachter through two
8   holding companies, Nathan M. Technologies and Seth Chemicals, and 50% owned by Lezdey, also
9   through two holding companies, J.L. Technology LP and J & D Science, Inc. Shortly after forming
10   Sonoran, Wachter and Lezdey formed Protease Sciences, Inc. ("Protease") and authorized Protease to
11   serve as Sonoran's agent for, among other things, negotiating and entering into licensing agreements
12   on behalf of Sonoran.  Protease was originally owned 50% by Wachter and his family and 50% by
13   Lezdey and his family.

14       On April 16, 1998, Protease entered into a purported License Agreement with debtor Arriva
15   Pharmaceuticals, Inc. ("Arriva"), then known as AlphaOne Pharmaceuticals, under which Protease
16   granted Arriva exclusive license to utilize the Sonoran patents in specified medical fields. The validity
17   of the Protease/Arriva license is one of the central disputes giving rise to numerous lawsuits between
18   Wachter and Lezdey.  Wachter alone signed the agreement on behalf of Protease, but Arriva has
19   contended that Lezdey advised and approved the execution of the agreement.   Lezdey, on the other
20   hand, has alleged that the agreement was unlawfully executed without his knowledge or consent.

21       AlphaMed Pharmaceuticals ("AlphaMed") is the final relevant party to the dispute. AlphaMed
22   was formed by Lezdey and his family in 1999. In the same year, AlphaMed purportedly received a
23   license from Protease for its patents.  Arriva has alleged that the Protease/AlphaMed license is invalid
24   and violates the terms of the Protease/Arriva exclusive licensing agreement.

25       These bankruptcy appeals are the latest in a number of lawsuits between Alphamed, Arriva, and
26   individuals involved with both corporations; these lawsuits include (1) a 1999 case filed in Arizona state
27   court by Wachter against Lezdey, Lezdey's wife and sons, and others, regarding the ownership of a
28   patent license; (2) a 1999 lawsuit filed by Arriva in this Court, which was stayed during the pendency

2

1  of the Arizona litigation; (3) a 2003 lawsuit filed by AlphaMed in Florida district court, which resulted

2  in a $78 million jury verdict in favor of AlphaMed; the district court entered judgment as a matter of

3  law in favor of Arriva, and the case is now on appeal in the Eleventh Circuit; and (4) a 2007 lawsuit

4  filed by John Lezdey in Nevada state court, which was automatically stayed due to Arriva's bankruptcy

5  case. These other lawsuits are relevant to the bankruptcy appeals in a variety of ways, some discussed

6  below.

7

8  **I.     Bankruptcy proceedings below and instant appeals**

9         On August 29, 2007, reorganized debtor-appellee Arriva Pharmaceuticals, Inc. ("Arriva") filed

10  a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.   The first appeal concerns a

11  proof of claim filed by AlphaMed in the amount of $78 million, which was the amount of the vacated

12  Florida jury verdict referenced in footnote 1 *supra*. The Bankruptcy Court disallowed the claim based

13  upon the Florida court's entry of judgment as a matter of law. The second appeal relates to an adversary

14  complaint that Alphamed filed in the Bankruptcy Court and which sought a determination that the

15  Protease/Arriva license was not the property of the estate.  In an order dated January 11, 2008, the

16  Bankruptcy Court dismissed AlphaMed's complaint with prejudice on the ground that AlphaMed lacked

17  standing to seek declaratory relief.

18         The other two appeals relate to proofs of claim filed by Protease Sciences, Inc. ("Protease") and

19  Sonoran Desert Chemicals LLC ("Sonoran"). Protease filed a claim in the amount of $30 million, AA

20  004, and Sonoran filed a claim in an "undetermined" amount. AA 024. Each proof of claim was signed

21  only by John Lezdey as "President" of each entity. The bases of the Protease and Sonoran claims were

22  the same:

23         1.    An action has been filed in Nevada against Arriva et al related to the findings of
                 the jury in the Miami lawsuit of AlphaMed Pharmaceuticals vs. Arriva. The
24               enclosed jury findings are attached.

25         2.    Arriva agents have broken in offices and homes wherein trade secrets were
                 stored which were stolen.  The trade secrets appeared in Arriva's patent
26               applications.

27         3.    Arriva paid Wachter to file lawsuits to harass the company and to waste its assets
                 as per Arriva/Wachter agreement which has been filed in this court.
28

3

1   AA 005, 025.

2   On December 13, 2007, the Bankruptcy Court disallowed the Protease and Sonoran proofs of

3   claim, and alternatively estimated them at zero. In so ruling, Judge Jellen stated:

4   [T]he omnibus objection will be sustained as to Protease [PSI]. The record is clear that
    Mr. Lezdey filed the claim on behalf of Protease. He filed it in violation of a preliminary
5   injunction. I do not believe that the injunction in any way restricts or limits Federal
    Courts or Federal Court jurisdiction.

6
    All it does is restrict Mr. Lezdey from what he can do on behalf of Protease. And the
7   answer is that he can't do anything. And that was a matter of nonbankruptcy state law
    as to what his authority is, Mr. Lezdey's authority, as to Protease.
8
    And so I reject the argument that not letting him file the claim for Protease is in
9   derogation of any Federal jurisdiction.

10  For the exact same reason I sustain the omnibus objection as to Sonoran.

11  AA 517:25-518:14.

12  On December 12, 2007, Arriva filed its Reorganization Plan. On January 8, 2008, AlphaMed

13  filed an objection to the confirmation of the Plan. On January 16 and 17, 2008, the Bankruptcy Court

14  held a full trial on plan confirmation, during which attorneys for Arriva and AlphaMed examined two

15  witnesses. Arriva's Plan received 100% approval from the voting creditors. *Id.* On January 30, 2008,

16  the Bankruptcy Court entered the Order Confirming Debtor's Fourth Amended Chapter 11 Plan of

17  Reorganization. The Plan expressly addresses the possibility that the Eleventh Circuit will reverse the

18  Florida district court's order granting judgment as a matter of law to Arriva. The Plan establishes a

19  reserve for disputed claims, including AlphaMed's claim presently on appeal to the Eleventh Circuit.

20  In confirming the Plan, the Bankruptcy Court found, "[s]uch a reserve will enable the Debtor to perform

21  its duties under the Plan [as to division of funds for creditors] in the event of a successful appeal by

22  AlphaMed in the Eleventh Circuit."

23

24  **II.    Arizona state lawsuit:** *Wachter et al. v. John Lezdey et al.***, No. CV 99-9334 (Superior Court**
            **of Arizona, Maricopa County)**
25
26  In May 1999, Wachter and two business entities, Seth Chemicals Inc., and Nathan M.

27  Technologies LLP, filed suit against Lezdey, his wife Noreen Lezdey, his sons Darren and Jarett

28  Lezdey, and business entities associated with the Lezdeys: J & D Science Inc., J.L Technology Limited

United States District Court
For the Northern District of California

1  Partnership, Sonoran Desert Chemicals LLP, and Protease Sciences Inc. AA 310.

2      In February 2000, following an evidentiary hearing attended by John Lezdey, the Arizona court

3  issued a preliminary injunction that prohibited Lezdey, his sons, J & D Science Inc. and J.L. Technology

4  Limited Partnership from "acting or speaking, or purporting to act or speak, on behalf of Protease or

5  Sonoran without Plaintiffs' expressed consent." AA 358.[1]  The preliminary injunction also prohibited

6  the defendants from contacting any of Arriva's potential business partners and investors or otherwise

7  interfering with Arriva's business operations. AA 358.

8      The Arizona court issued extensive Findings of Fact along with its preliminary injunction order.

9  AA 347-59. These findings include:

10     •      "Lezdey knew the material terms and conditions of the [Protease/Arriva] License
              Agreement, advised Wachter that the Agreement was valid, and approved Wachter's
11             execution thereof." AA 353 ¶ 41

12     •      The Protease/Arriva license is "valid and enforceable." AA 356 ¶ 61

13     In November and December 2000, the Arizona Superior Court added to its finding through an

14  amendment to the preliminary injunction. AA 178-81. The court further found:

15     •      "Michael Weber, Esq., acting for John, Jarett and Darren Lezdey, formed
              AlphaMed Pharmaceuticals, Inc. in June of 1999. Initial Stockholders included
16             Jarett Lezdey, Darren Lezdey, Michael Weber. The Board of Directors initially
              included John, Jarett, and Darren Lezdey, and Michael Weber."
17
       •      "In September of 1999, without corporate authority to do so, , the Lezdeys and
18             Michael Weber caused there to be created a purported License Agreement from
              Protease Sciences, Inc., to AlphaMed Pharmaceuticals, Inc., related to certain
19             patents which were then licensed to Protease from Sonoran Desert Chemicals
              Limited Liability Company. This purported License Agreement was executed
20             by John Lezdey, purporting to act for Protease, and by Jarett Lezdey, acting for
              AlphaMed Pharmaceuticals, Inc."
21
       •      "On 11/22/99, John Lezdey testified untruthfully in his deposition in his action
22             that he was not on the Board of Directors of AlphaMed and that AlphaMed did
              not then (purport) to have a License Agreement from Protease."
23
       •      "The existence of the purported 9/99 License Agreement to AlphaMed from
24             Protease (and the existence of a second purported 3/01/00 License Agreement
              between the same entities) was concealed from Plaintiffs' counsel until certain
25             depositions of the Lezdeys held on 8/14/00 in Tampa, Florida."

26  AA 179-80.

27  ───────────────

28  [1]  Protease and Sonoran were dismissed as defendants prior to the hearing on the preliminary
    injunction. AA 388.

5

1    Following a series of delays, including an unsuccessful attempt by Lezdey to have the case
2  removed to a federal court in Arizona, a bench trial took place in January 2002. AA 162-63. Despite
3  repeated advance notice, neither Lezdey, his sons, his wife, nor their counsel attended the trial. AA 163.
4  In addition, in the month preceding the trial, the Arizona court entered a liability judgment against
5  Lezdey's sons as a sanction for their failure to appear for depositions. AA 364, 381. The trial against
6  Lezdey's sons, therefore, was on the issue of damages only. Another factor complicating the trial was
7  Lezdey's declaration of bankruptcy on the day immediately preceding the trial's commencement,
8  thereby automatically staying the case against him. AA 163. Notwithstanding these complications, the
9  court conducted a bench trial against Lezdey's sons (on damages only), his wife Noreen and J.L.
10  Technology.[2] The trial included multiple hours of witness testimony and the introduction of almost 300
11  exhibits.

12    On February 22, 2002, the Arizona Court issued a permanent judgment against Lezdey's sons
13  and J.L. Technology.[3] AA 162-176. The order made the preliminary injunction permanent as to these
14  defendants, and permanently enjoined those parties "and any other persons or entities acting in concert
15  with them" from "acting or speaking, or purporting to act or speak, on behalf of" Protease or Sonoran
16  without Dr. Wachter's "express written consent." AA 175. The permanent injunction also enjoined the
17  same parties "and any other persons or entities acting in concert with them" from "taking any actions
18  in any capacity to give effect to (or to draw to themselves or any entity, including AlphaMed
19  Pharmaceuticals, Inc., any benefit from) the invalid License Agreements between" Protease and
20  AlphaMed." AA 175. The order stated that the permanent injunction did not apply to John Lezdey or
21  J.D. Science, Inc. because those defendants were in bankruptcy proceedings, but that "[t]he Preliminary
22  Injunction, as amended on November 27, 2000, remains in effect against John Lezdey and J & D
23  Science, Inc." AA 163. The court awarded Wachter $17.4 million in compensatory and punitive
24  damages, and reiterated its finding that the Protease/Arriva license was "valid and enforceable" and

25

26    [2] Lezdey's other holding company, J & D Science, was not a party to the trial, having also filed
27  for bankruptcy in the week prior to trial.

28    [3] The Arizona Superior Court also entered judgment against Lezdey's wife Noreen. This
    judgment was vacated on appeal.

United States District Court
For the Northern District of California

1  remained "fully in effect." AA 168, 171. Lezdey's sons and J.L. Technology unsuccessfully appealed

2  the Arizona judgment and permanent injunction.

3       As a result of the bankruptcy stay, John Lezdey was not a direct party to the Arizona trial, the

4  final judgment or the permanent injunction.[4]

**III.    California federal lawsuit: *Arriva Pharmaceuticals, Inc. v. Sonoran Desert Chemicals LLC et al.*, C 99-2169 (N.D. Cal.)**

In May 1999, Arriva filed a complaint before this Court, naming seven defendants: Lezdey, Lezdey's two sons (Jarrett and Darren Lezdey), Sonoran, Protease, and Lezdey's two holding companies, J&D Science and J.L. Technology. After this Court denied Arriva's motion for a temporary restraining order, the parties agreed in December 1999 to a stay of the federal action pending the outcome of the related Arizona case. The parties noted that the Arizona court was adjudicating issues related to the validity of the Protease/Arriva license, and that those issues could have a significant impact on the federal California case.

By order filed July 6, 2006, this Court granted Arriva's motion to dismiss the defendants' counterclaim for declaratory relief. AA 183-96. The Court noted that the granting of declaratory relief is discretionary, and that under the factors articulated in *Brillhart v. Excess Insurance Company*, 316 U.S. 491, 495 (1942) – avoidance of duplicative litigation, avoidance of needlessly determining issues of state law, and discouragement of forum shopping – the defendants' declaratory relief counterclaim should be dismissed. The Court found that the "Protease/Arriva license issue has already been extensively litigated in the Arizona court, and that any litigation in this court would be duplicative. The license's validity was a specific finding in the court's final judgment and permanent injunction against Lezdey's sons and J.L. Technology and in its preliminary injunction order against Lezdey." AA 190. The Court made no finding as to the collateral estoppel effect of the Arizona court's findings. AA 192.

The Court also held that Sonoran's counterclaims should be dismissed because Lezdey lacked the capacity to file those counterclaims because Sonoran did not have Wachter's authorization to do so.

---

[4]  Lezdey was, however, indirectly a party to the trial and its result as a co-owner of J.L. Technology LP.

7

1  AA 194. Arriva argued that Sonoran, by the terms of its own Operating Agreement and the rulings of

2  the Arizona court, could only lawfully bring a counterclaim with the consent of Wachter, and that such

3  authorization was lacking. AA 194. The defendants did not contest these facts, and instead argued that

4  the Court implicitly rejected the lack of capacity argument when it granted the defendants leave to file

5  their counterclaims. However, the Court rejected that argument, noting that providing leave to file a

6  claim is not a decision on that claim's merits. Because defendants did not contest the key facts

7  presented by Arriva, the Court concluded that Sonoran lacked the capacity to sue without Wachter's

8  consent.

9

10  **IV.    Florida federal lawsuit, *AlphaMed Pharmaceuticals Corp. v. Arriva Pharmaceuticals Inc.***

11      ***& Spinelli Corp.*, No. 03-20078 CV (S.D. Fla)**

        In 2003, AlphaMed filed suit against Arriva in the United States District Court for the Southern

12
    District of Florida. In 2005, the lawsuit proceeded to trial on three claims: (1) misappropriation of trade
13
    secrets; (2) tortious interference with an advantageous business relationship; and (3) common law unfair
14
    competition. *AlphaMed v. Arriva*, 432 F. Supp. 2d 1319, 1329 (S.D. Fla. 2006).[5]
15

16      Initially, a jury returned at $78 million verdict in favor of AlphaMed. Although the validity of

    the Protease/Arriva license was not an element of any of the causes of action in the Florida litigation,
17
    the jury specially found (and handwrote on the verdict form) that one of Arriva's acts of unfair
18
    competition was the following:
19

        When AlphaOne/Arriva improperly accepted the signature of Alan [sic] Wachter as
20      Protease Science CEO the process of unfair competition began as the Protease Science
        by-laws do <u>not</u> provide for said office and give authority for signing contracts to the
21      President.

22  AA 301-02.

23      By order filed May 26, 2006, the Florida district court granted Arriva's motion for judgment as

24  a matter of law on all three claims, finding that AlphaMed had failed to prove damages, a necessary

25  element to each claim. *AlphaMed v. Arriva*, 432 F. Supp. 2d at 1334, 1352 and 1353. The court held

26  that AlphaMed's claim linking Arriva's conduct to AlphaMed's alleged lost profit damages was

27

28      [5] The Florida district court's lengthy opinion granting Arriva's motion for judgment as a matter
    of law contains a detailed statement of the history between Wachter and Lezdey.

United States District Court
For the Northern District of California

1  contingent on a long list of assumptions, and that "[f]ar from demonstrating that each of AlphaMed's
2  'but for' assumptions was established, however, the evidence introduced at trial demonstrated
3  conclusively that many of these assumptions were demonstrably false, prohibited by law or, at the very
4  least, speculative." *Id.* at 1347. The court also granted Arriva's alternative motion for a new trial, and
5  specifically held that the new trial ruling "does not affect the finality of the judgment in Arriva's favor."
6  *Id.* at 1356 n. 54. The court found that the jury had, *inter alia,* failed to follow a jury instructions
7  regarding the litigation privilege because the jury found Arriva liable to AlphaMed for unfair
8  competition based on, *inter alia,* the Arizona litigation. *Id.* at 1356. AlphaMed filed an appeal of the
9  JMOL, and that appeal is currently pending before the United States Court of Appeals for the Eleventh
10  Circuit. According to AlphaMed, oral argument on the appeal is scheduled for August 27, 2008.

11

12  ## STANDARD OF REVIEW

13  This Court reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard.
14  Fed. Bankr. R. 8013; *In re Acequia, Inc.,* 787 F.2d 1352, 1357 (9th Cir. 1986). The Court reviews *de*
15  *novo* the Bankruptcy Court's conclusions of law. *See In re Commercial W. Fin. Corp.,* 761 F.2d 1329,
16  1333 (9th Cir. 1985).

17

18  ## DISCUSSION

19  ### I.   Appeal 08-691: Disallowance of AlphaMed's $78 million proof of claim

20  AlphaMed filed a proof of claim in Arriva's bankruptcy case based entirely on the overturned
21  $78 million jury verdict from the Florida action. AA 043. The stated basis for the claim is "legal," and
22  attached to the proof of claim form was the overturned jury verdict form. AA 046-058. At a December
23  13, 2007 hearing, the Bankruptcy Court disallowed AlphaMed's claim and alternatively estimated it at
24  zero. AA 518:14-19, 521:7-11. In disallowing AlphaMed's claim, the Bankruptcy Court noted that
25  "this ruling is subject to being revisited in the event that the Florida court ends up finding that
26  AlphaMed does have a valid claim against the debtor." AA 518:17-19. The Bankruptcy Court also
27  granted AlphaMed relief from the automatic stay to pursue its appeal of the JMOL in front of the
28  Eleventh Circuit. AA 512:8-24. The Bankruptcy Court's Order Disallowing Claim of AlphaMed

9

1  Pharmaceuticals Corp. was entered on December 27, 2007. The order states that "This order does not
2  preclude reconsideration under Bankruptcy Code Section 502(j)  or otherwise based on further
3  developments in the pending Florida litigation." AA 432.

4         AlphaMed appeals this ruling, contending that the Bankruptcy Court erred by disallowing the
5  claim instead of holding adjudication of the claim in abeyance pending the resolution of the Eleventh
6  Circuit appeal. AlphaMed contends that the Bankruptcy Court should have exercised its discretion
7  under Bankruptcy Rule 3018(a) to temporarily allow AlphaMed's claim for voting purposes while
8  simultaneously holding the determination of the claim in abeyance pending final resolution of the
9  Florida litigation. AlphaMed also argues that holding ruling on the objection to AlphaMed's claim in
10  abeyance would not have impacted voting or confirmation of the plan or reorganization.

11         The Court finds this contention unpersuasive. The Bankruptcy Court lifted the stay to allow
12  AlphaMed to pursue its appeal in the Eleventh Circuit, and the Bankruptcy Court expressly provided
13  in its order that AlphaMed's claim would be revisited pursuant to Bankruptcy Code Section 502(j)[6] if
14  AlphaMed prevailed on appeal. In addition, when the Bankruptcy Court confirmed the Plan, the court
15  also stayed the distribution of the large majority of the unsecured claims pool such that, if AlphaMed
16  prevails on appeal, it may take its pro rata share of that pool along with the other unsecured creditors.
17  SPA 133:9-12; 154-55. Further, delaying adjudication of AlphaMed's claim until the Eleventh Circuit
18  appeal is resolved would have needlessly injected uncertainty into the bankruptcy process. As Arriva
19  notes, the Eleventh Circuit appeal is still pending, and a decision will not be rendered until September
20  2008 at the very earliest.

21         AlphaMed also contends that the Bankruptcy Court erred by holding that the Florida jury's
22  liability findings were overturned. AlphaMed argues that because the Florida district court entered
23  judgment as a matter of law on the sole basis that AlphaMed "failed to properly calculate damages," the
24  jury's findings of liability somehow remain intact.  In particular, AlphaMed cites the jury's
25  (handwritten) findings on the verdict form in support of AlphaMed's unfair competition claim, including

26

27       [6] That section provides, in relevant part, that "A claim that has been allowed or disallowed may
28  be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities
    of the case."

United States District Court
For the Northern District of California

1  the jury's finding that "When AlphaOne/Arriva improperly accepted the signature of Alan [sic] Wachter
2  as Protease Science CEO the process of unfair competition began as the Protease Science By-Laws do
3  not provide for said office and give authority for signing contracts to the President." AA 301-02.

4      AlphaMed's reading of the Florida's court's JMOL order is selective and strained. Contrary to
5  AlphaMed's characterization, the Florida court did not simply take issue with AlphaMed's "calculation"
6  of damages; instead, the court held that AlphaMed had entirely failed to prove that it suffered any
7  damages as a result of Arriva's conduct. Because damages were a necessary element to each of
8  AlphaMed's claims, the court entered judgment in favor of Arriva on each claim. The cases cited by
9  AlphaMed are all distinguishable. *See, e.g., Berry v. United States*, 312 U.S. 450 (1941) (district court
10 denied JMOL; appellate court reversed; Supreme Court reversed and affirmed district court, finding
11 evidence sufficient to sustain jury's verdict); *Barber v. Whirlpool Corp.*, 34 F.3d 1268 (4th Cir. 1994)
12 (reversing denial of JMOL as to one claim, affirming denial of JMOL as to second claim, and remanding
13 for new trial on damages because jury verdict did not apportion damages between two claims);
14 *Firestone Tire & Rubber Co. v. Pearson*, 769 F.2d 1471 (10th Cir. 1985) (Firestone appealed denial of
15 JMOL; appellate court remanded for new trial on calculation of damages).

16

17 **II.    Consolidated appeals 08-692 & 08-693: Disallowance of proofs of claim filed by Protease
18       and Sonoran**

19     On October 9, 2007, Protease filed a $30 million proof of claim in Arriva's bankruptcy case.
20 AA 004-023. The stated basis for the claim was "contract + bribery" and "3 million shares." AA 004.
21 Attached to the Protease claim is a statement of the claims:

22     1.    An action has been filed in Nevada against Arriva et al relating to the findings
             by the jury in the Miami lawsuit of AlphaMed Pharmaceuticals vs. Arriva. The
23              enclosed jury findings are attached.

24     2.    Arriva agents have broken in offices and homes wherein trade secrets were
             stored which were stolen. The trade secrets appeared in Arriva's patent
25              application.

26     3.    Arriva paid Wachter to file lawsuits to harass the company and to waste its assets
             as per Arriva/Wachter agreement which has been filed in this court.

27 AA 005. Also attached to the Protease claim is a copy of the Protease/Arriva license agreement, AA
28 006-008, an excerpt from the deposition transcript of Brian W. Napper, taken in the Arizona state

11

United States District Court
For the Northern District of California

1  lawsuit, AA 009-010, and the Florida jury's verdict form. AA 011-023.

2  Also on October 9, 2007, Sonoran filed a proof of claim in an "undetermined" amount in

3  Arriva's bankruptcy case. AA 024-042. The stated basis for the claim was "theft of intellectual

4  property" and "bribery." AA 024. The same documents, including the statement of claims, were

5  attached to the Sonoran proof of claim as to the Protease proof of claim. AA 025-042. John Lezdey

6  signed both the Protease and the Sonoran proofs of claim. AA 004, 024.

7  On December 13, 2007, the Bankruptcy Court held a hearing on, *inter alia*, Arriva's objection

8  to the Protease and Sonoran claims, and disallowed the claims in their entirety. AA 469-523. On

9  December 27, 2007, the Bankruptcy Court entered a final order disallowing the Protease and Sonoran

10  claims without leave to amend. AA 435-36, 439-42. The Bankruptcy Court concluded that these claims

11  were invalidly filed because Lezdey violated the preliminary injunction issued by the Arizona state

12  court, which prohibited Lezdey from acting on behalf of Protease and Sonoran. AA 517-18. Judge

13  Jellen stated during the hearing,

14       The record is clear that Mr. Lezdey filed the claim on behalf of Protease. He filed it in
15       violation of a preliminary injunction. I do not believe that the injunction in any way
         restricts or limits Federal Courts or Federal Court jurisdiction.

16       All it does is restrict Mr. Lezdey from what he can do on behalf of Protease. And the
17       answer is he can't do anything. And that was a matter of nonbankruptcy state law as to
         what his authority is, Mr. Lezdey's authority, as to Protease.

18       And so I reject the argument that not letting him file the claim for Protease is in
19       derogation of any Federal jurisdiction.

20       For the exact same reason I sustain the omnibus objection as to Sonoran.

21  AA 518.

22  Protease and Sonoran challenge the Bankruptcy Court's order on numerous grounds. First, they

23  confusingly assert that the Bankruptcy Court erroneously applied the *Rooker-Feldman* doctrine in

24  disallowing the claims. However, by stating that he "did not believe that the injunction in any way

25  restricts or limits Federal Courts or Federal Court jurisdiction," the Bankruptcy Court implicitly

26  disclaimed reliance on the *Rooker-Feldman* doctrine, which is jurisdictional. *See Exxon-Mobil Corp.*

27  *v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) ("*Rooker* and *Feldman* exhibit the limited

28  circumstances in which this Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257,

12

United States District Court
For the Northern District of California

1 precludes a United States district court from exercising subject-matter jurisdiction in an action it would
2 otherwise be empowered to adjudicate . . . .").

3     Instead, the Bankruptcy Court held that Lezdey did not have authority to act on behalf of
4 Protease and Sonoran. The preliminary injunction issued by the Arizona court – which is still in effect
5 and binding on Lezdey – prohibits Lezdey from "acting or speaking, or purporting to speak, on behalf
6 of Protease or Sonoran without [Wachter's] expressed consent." AA 358. The Bankruptcy Court
7 properly recognized that under the terms of the Arizona court's order, Lezdey was without authority to
8 file the claims on behalf of Protease or Sonoran. *Cf. Travelers Cas. & Surety Co. of America v. Pacific*
9 *Gas & Elec. Co.*, 127 S. Ct. 1199, 1205 (2007) ("[W]e have long recognized that the basic federal rule
10 in bankruptcy is that state law governs the substance of claims, Congress having generally left the
11 determination of property rights in the assets of a bankrupt's estate to state law"; this principle "requires
12 bankruptcy courts to consult state law in determining the validity of most claims") (internal citations
13 and quotations omitted).

14     Appellants' other contentions are unavailing. Relying on *Gens v. Resolution Trust Corporation*,
15 112 F.3d 569 (1st Cir. 1997), appellants contend that Arriva lacked standing to challenge Lezdey's
16 authority to file the Protease and Sonoran claims. In *Gens*, the debtor challenged a claim based on a
17 federal regulation that was enacted to protect a class of persons to which the debtor did not belong. *Id*
18 at 574. The court held that the debtor lacked standing because "[n]othing in the statute, the RTC
19 regulation or the attendant case law remotely suggests that Congress or the agency itself intended to
20 confer standing on chapter 11 debtor to enforce the RTC regulation." *Id*. Here, in contrast, the
21 Bankruptcy Court cited a particular decision by a court, and thus there is no such concern about broadly
22 conferring standing.

23     Appellants also contend that the claims were valid under the corporate doctrine of "apparent
24 authority." As an initial matter, the Court notes that the only case appellants rely on for this proposition,
25 *In re Cool Fuel, Inc.*, 117 Fed. Appx. 514 (9th Cir. 1994), is unpublished, and thus appellants may not
26 cite this case as precedent. *See* Fed. R. App. P. 32.1. In any event, *Cool Fuel* is inapposite. In that case,
27 the bankruptcy court held that a debtor was not liable for a tax claim. The Ninth Circuit reversed, and
28 rejected the debtor's argument that it was not liable for the taxes because the debtor's vice-president had

13

For the Northern District of California
United States District Court

1  incurred the tax liability without the knowledge of the debtor. "A principal that 'puts an agent in a

2  position that enables the agent, while apparently acting within his authority, to commit a fraud upon

3  third persons is subject to liability to such third persons for the fraud.'" *Id.* at 516 (quoting *Reusche v.*

4  *California Pacific Title Company*, 231 Cal. App. 2d 731, 738 (1965)). Appellants argue that they should

5  be treated like the debtor in *Cool Fuel* and be bound by Lezdey's signature, and they suggest that

6  Protease and Sonoran were unaware of the Arizona court order. This argument is legally inapt, and it

7  flies in the face of the record, which is replete with evidence showing the connection between Protease,

8  Sonoran, and Lezdey. In *Cool Fuel*, the court held that the principal was liable for the acts of its agents

9  and protected innocent third parties upon whom the agent had committed fraud. In contrast, here there

10  are no such innocent third parties, and instead appellants attempt to use the doctrine to affirmatively

11  sanction the unauthorized acts of its agents.

12

13

14  **III.    Appeal 08-825: AlphaMed adversary proceeding appeal**

15       On October 30, 2007, AlphaMed filed a complaint against Arriva in the Bankruptcy Court.

16  AlphaMed's complaint requested that the Bankruptcy Court determine that the Protease/Arriva license

17  was not part of Arriva's bankruptcy estate. AA 059. AlphaMed's complaint alleged that it "is a creditor

18  of the Debtor, and has an interest in the intellectual property that is the subject of the purported license

19  agreement . . . ." AA 060. AlphaMed claims to be a creditor based upon the jury's findings in the

20  Florida case. AA 066. AlphaMed's complaint alleged that the "Debtor asserts an interest in certain

21  property that is owned by Lezdey as inventor, Sonoran and by AlphaMed by assignment." AA 061.

22  However, in its opposition to Arriva's motion to dismiss the adversary complaint, AlphaMed

23  affirmatively disclaimed an interest in a judicial determination that it owned the Protease license:

24  "AlphaMed does not seek a determination that the License is the property of AlphaMed; it seeks a

25  declaration that the License is not property of this estate." AA 274.

26       The Bankruptcy Court granted Arriva's motion to dismiss AlphaMed's adversary complaint.

27  The Bankruptcy Court cited three independent bases for the dismissal: (1) AlphaMed lacked standing

28  because it failed to allege a particularized injury; (2) the *Rooker-Feldman* doctrine; and (3) the Arizona

United States District Court
For the Northern District of California

14

1    court's resolution of the validity of the Protease license precluded AlphaMed's adversary complaint.

2    With regard to AlphaMed's lack of standing, the Bankruptcy Court found that AlphaMed did not allege

3    particularized injury because AlphaMed was "not trying to quiet their title to anything. In fact, they

4    disclaim any intent of trying to quiet their own title to an asset against the claim of the estate. They're

5    not even seeking a ruling as to who, if anyone, might own the [Protease/Arriva] license." AA 514.

6        The Court finds the Bankruptcy Court properly dismissed AlphaMed's complaint. AlphaMed

7    expressly stated that it did not seek a judicial determination that it owned the Protease license, and thus

8    did not identify any particularized injury to AlphaMed. As the Bankruptcy Court noted,

> If there were standing to assert such a cause of action it would lie in every single creditor
> in the estate. And the law is not every single creditor in the estate has the right to
> prosecute actions to determine what is and isn't property of the estate, rather under
> Bankruptcy Code Section 323(a), the trustee is the representative of the estate.

AA 515. This assessment is consistent with Ninth Circuit case law, which holds that "11 U.S.C. § 323

vests the bankruptcy trustee with the exclusive right to sue on behalf of the bankruptcy estate." *Estate*

*of Spirtos v. One San Bernadino County Superior Court Case Numbered SPR 02211*, 443 F.3d 1172 (9th

Cir. 2006); *In re Parmetex, Inc.*, 199 F.3d 1029 (9th Cir. 1999) (creditor has standing to bring a claim

belonging to the estate where trustee has stipulated that creditor could sue on trustee's behalf).

*Committee of Tort Litigants v. The Catholic Diocese of Spokane*, Case No. 05-0274, (E.D. Wash.

Jan. 24, 2006), is distinguishable. In *Catholic Diocese*, the court permitted a creditor's committee to

bring an action seeking a declaration that diocesan property was part of the bankruptcy estate. Here,

there was no allegation that the debtor was doing harm to the bankruptcy estate by excluding property

from the estate. Instead, AlphaMed wanted a declaration that the Protease/Arriva license was *not*

property of the bankruptcy estate, but did not seek a declaration the license was the property of

AlphaMed. While this was no doubt a tactical decision based on a desire to avoid any collateral

estoppel or claim preclusion consequences of the prior Florida and Arizona litigation, it was

nevertheless a decision made by AlphaMed on which the Bankruptcy Court properly relied in dismissing

this action. As the claim was presented, AlphaMed lacked standing.

///

15

1

**CONCLUSION**

2          For the foregoing reasons and for good cause shown, the Court hereby AFFIRMS the

3     Bankruptcy Court in these four related appeals.

4

5          **IT IS SO ORDERED.**

6

7     Dated: August 1, 2008

                                            SUSAN ILLSTON
8                                            United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

1

2

3

IN THE UNITED STATES DISTRICT COURT

4

FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6 | In re
ARRIVA PHARMACEUTICALS, INC., a
California Corporation,
7 |             Reorganized Debtor-Appellee.

Nos. C 08-691 SI, C 08-692 SI, C 08-693 SI, C
08-825 SI

8 | _____/

9 | PROTEASE SCIENCES, INC.,
          Claimant-Appellant,

**JUDGMENT RE: BANKRUPTCY
APPEALS**

10 | v.

11 | ARRIVA PHARMACEUTICALS, INC.,
         Debtor-Appellee.

12 | _____/

13 | SONORAN DESERT CHEMICALS, INC.,
         Claimant-Appellant,

14 | v.

15 | ARRIVA PHARMACEUTICALS, INC.,
         Debtor-Appellee.

16 | _____/

17 | ALPHAMED PHARMACEUTICALS CORP,

18 |          Plaintiff-Appellant,

19 | v.

ARRIVA PHARMACEUTICALS INC,

20

         Defendant-Appellee.

21 | _____/

22

This Court has affirmed the Bankruptcy Court in these four related bankruptcy appeals.

23

Judgment is entered accordingly.

24

**IT IS SO ORDERED AND ADJUDGED.**

25

26

Dated: August 1, 2008

27

SUSAN ILLSTON
United States District Judge

28

**EXHIBIT D**

United States District Court
For the Northern District of California

Court Name: U.S. District Court, NDCA
Division: 3
Receipt Number: 34611022577
Cashier ID: sprinka
Transaction Date: 08/19/2008
Payer Name: nationwide legal inc
----------------------------------
NOTICE OF APPEAL/DOCKETING FEE
 For: nationwide legal inc
 Case/Party: D-CAN-3-08-CV-000692-001
 Amount:        $455.00
----------------------------------
CHECK
 Check/Money Order Num: 22296
 Amt Tendered: $455.00
----------------------------------
Total Due:      $455.00
Total Tendered: $455.00
Change Amt:     $0.00

si


Checks and drafts are accepted
subject to collections and full
credit will only be given when the
check or draft has been accepted by
the financial institution on which
it  was drawn.